**VAUTRAIN v. NEEL (CAUMONT, Intervener).** *

**No. 16127.**

Court of Appeal of Louisiana. Orleans.

Oct. 21, 1935.

O. S. Livaudais, of New Orleans, for appellant.

Ernest J. Robin, of New Orleans, for appellee.

WESTERFIELD, Judge.

The question presented by this appeal is the validity of an alleged reinscription of a mortgage, a question which the court, a qua, by its judgment resolved in the negative.

On December 14, 1934, Albert P. Vautrain instituted foreclosure proceedings against certain real estate in the city of New Orleans, described in his petition, as a result of which the property was adjudicated to him for the sum of $1,425. Baptiste Caumont, the holder of a promissory note in the sum of $800, secured by a mortgage granted subsequently to that upon which Vautrain had caused execution to issue, intervened and by rule directed to Vautrain and the civil sheriff,

---

*Rehearing denied Nov. 18, 1935.

claimed the entire proceeds of the sale upon the ground that the Vautrain mortgage had pre-empted. This rule was made absolute, and the defendant in rule, Albert P. Vautrain, has appealed to this court.

The issue of priority as between the Vautrain and Caumont mortgages depends upon the effect to be given a certain authentic act dated October 24, 1932, and recorded in the mortgage office October 25, 1932, M. O. B. 1464, Folio 89. The Vautrain mortgage, executed October 24, 1924, by John Neel, was given as security for three certain promissory notes of even date calling for the sum of $1,000 each. The Caumont mortgage was executed December 6, 1928, to secure a note of $800 executed by the same party and bearing upon the same property. On October 25, 1932, there was recorded in the mortgage office a copy of the act of October 24, 1932, which reads as follows:

"State of Louisiana, Parish of Orleans, City of New Orleans.

"Be it known, that on this the 24th day of October, in the year of our Lord Nineteen Hundred and Thirty-Two and of the Independence of the United States of America, the 157th;

"Before me, Francis D. Charbonnet, Junior, a Notary Public, in and for the Parish of Orleans, State of Louisiana, duly commissioned and qualified and in the presence of the witnesses hereinafter named and undersigned,

"Personally came and appeared:

"John Neel, of the full age of majority and a resident of this City, who declared that he is justly and truly indebted unto F. D. Charbonnet, Jr., or to such holder or holders of three mortgage notes, for the sum of one thousand dollars ($1,000.00) each, dated at New Orleans, La., on the 24th day of October, 1924, drawn and subscribed by the said John Neel and by himself endorsed, payable each One Year after date, with interest thereon at the rate of seven per cent per annum from date until paid, and which said notes were paraphed Ne Varietur by F. D. Charbonnet, Notary, for identification with an act of mortgage granted in favor of said F. D. Charbonnet, Jr., or to such holder or holders of said mortgage notes and to secure the payment of the said notes after the property hereinafter described and which act was duly recorded in M. O. B. 1307, Fol. 289.

"Two certain lots of ground, etc., in the Third district, of this city, in Sq. No. 362, b. b. Clouet, St. Claude Louisa and N. Rampart Sts., designed as Lots Nos. 25 and 1 and measure as follows:

"Lot No. 25 measures 30 feet front on Clouet St. by 120 feet in depth b. p. l.

"Lot No. 1 measures in F. M. 30 feet front on Clouet St. by 120 feet in depth b. p. l.

"Now, the said John Neel, has paid interest on said notes from date until October 24th, 1928, that no payment has been made on said notes, and that he still owes the sum of three thousand ($3,000.00) dollars, or one thousand dollars ($1,000.00) on each of the notes, plus all interest from October 24th, 1928 until now, and that the said holder or holders of said notes has consented to extend the payment of said notes until October 23rd, 1933, or to such day that said notes are extended to.

"Appearer further declared that he does waive and renounce any and all prescription that has or may have accrued against said notes and the said mortgage securing its payment and that he does hereby revive and renew the said notes and the said mortgage, and does revive and renew all the obligations undertaken by him, in said act of October 24th, 1924, duly recorded in M. O. B. 1307, Fol. 289.

"The said appearer further declared that this extension of payment renewal and revival of said notes and the mortgage securing same, shall in no manner operate any novation of the original mortgage and vendor's lien of the indebtedness, but that each and every obligation undertaken by him be and is still binding and obligatory by him.

"The said appearer further declared that he does hereby authorize, empower and request the Recorder of Mortgages in and for the Parish of Orleans to record this renunciation and renewal of said notes above described and make special mention hereof in the mortgage office, in margin of Book 1307, Fol. 289.

"Here the said John Neel declared under oath, to me, Notary, that he married but once, then to Elenora Fleming, who died many years ago, and that he has not remarried since.

"Thus done and passed and acknowledged before me, at my Office in the City of New Orleans, State of Louisiana, on the day, month and year above written, in the presence of Miss Eloise Bennett and Dewet Charbonnett, competent witnesses, who have signed with appearer and me, Notary, after due reading of the whole.

"[Signed]   John Neel,
            "F. D. Charbonnett, Jr., N. P.
"Witnesses:
"Dewett Charbonnett
"Eloise Bennet
"Original Date of Recordation:
"New Orleans, La., October 25th, 1932.
"11:05 a. m.—J. L. Fenner, Clerk.

"This is to certify, that the above is a true and correct copy of the Extension of Mortgage recorded in this Office in Book 1464, Fol. 89.

"[Signed] A. Rolfes,
                    "Deputy Recorder."

Caumont contends that the recording of this act did not amount to a reinscription of the Vautrain mortgage, as required by article 3369, R. C. C., and that, therefore, the mortgage had preempted for the reason that it does not purport to do anything more than effect a renunciation of prescription of the notes secured by the mortgage and was so regarded by the recorder of mortgages, who treated it as such, and, furthermore, the notes for the security of which the mortgage had been given, having prescribed, the mortgage was extinguished and could not be revived by an acknowledgment of the obligation and renunciation of prescription; and, finally, that reinscription can only be accomplished in the manner pointed out in article 3369 of the Civil Code, a procedure which was not followed in this case.

▮ Upon the first point made by intervener, we observe that the name given to an instrument by the parties, or by an official charged with its recordation, is not conclusive of its character and legal effect. Therefore, if the document otherwise serves the purpose of reinscription by meeting the requirements of law in that respect, it will be just as effective as though it had been originally declared to have been executed for that purpose and so characterized by the parties and by the recorder of mortgages.

▮ As to the second point, reliance is placed upon the principle of law to the effect that the mortgage falls with the extinguishment of the principal obligation and that no subsequent acknowledgment of the debtors affects the rights of creditors acquired by extinguishment of the principal obligation.

"If the notes which the mortgages were intended to secure were prescribed by lapse of time, the obligation on which they were based became thereby extinguished, and of this creditors have a right to avail themselves. Civil Code, art. 3429. The acknowledgment of the debt by the witness on the trial of the cause, cannot affect the rights which the creditors have acquired by reason of the prescription. These rights are beyond the reach of the debtor, and cannot be changed by any act of his, to their detriment. Pothier on Obligations, No. 700." Larthet v. Hogan et al., 1 La. Ann. 330.

But, in the instant case, the notes were not prescribed at the time of the execution of the authentic act under discussion, for, as stated in that act, the interest on the notes was paid up to October 24, 1928, which had the effect of interrupting prescription, which had not run on the 24th day of October, 1932, and would not have accrued until a year later. Levy v. Police Jury, 24 La. Ann. 292.

As to the third point raised by the intervener, article 3369, R. C. C., holds:

"The registry preserves the evidence of mortgages and privileges during ten years, reckoning from the day of its date. In all cases where the mortgages and privileges secure the payment of notes, bonds or other obligations, the whole or any part of which matures more than nine years from the date of the obligation, the registry preserves the evidence of such mortgages and privileges until one year after the date of maturity of the last maturing note, bond or other obligation as fixed by the original instruments from which they sprung or with which they are identified; and the Recorder of Mortgages in each Parish shall record all such mortgages and privileges in a special book and shall provide a special index therefor.

"The effect of the registry ceases in all cases, even against the contracting parties, if the inscriptions have not been renewed within the respective periods of time above provided, in the manner in which they were first made; and in all cases, the reinscription of the mortgages

and privileges shall preserve their effect for ten years from the date of the timely renewal as above provided."

We are referred to the following authorities as holding that the reinscription of a mortgage must be made in the same manner as the first inscription and that omission to reinscribe within ten years will result in a loss in rank and subsequent reinscription can have effect only from the date of reinscription. Shepherd v. Orleans Cotton Press Co., 2 La. Ann. 100; Liddell's Ex'rs v. Rucker, 13 La. Ann. 569; Johnson v. Succession of Lowry, 22 La. Ann. 205; Gegan v. Bowman, 22 La. Ann. 336; Byrne v. Citizens' Bank, 23 La. Ann. 275; Watson v. Bondurant, 30 La. Ann. 1.

The cases cited are authority for the proposition advanced, but the issue to be determined here is whether a certain authentic act recorded before the ten years had elapsed and before prescription had run upon the notes which the mortgage· secured, amounted to a reinscription of the mortgage within the meaning of the article of the Code, as having been made in the same manner as the original inscription. Intervener contends that the only way in which the mortgage could have been properly reinscribed was by causing a certified copy of the original act of mortgage to be placed of record in the parish of Orleans where the property was situated. The rule invoked does not apply to the parish of Orleans. Article 2259, R. C. C., provides:

"2259. In the parish of Orleans, when the act of transfer of property shall have been passed before a notary public, it shall be sufficient that the registering of the act be made, on a certificate being presented from the notary, who shall have passed the act containing:

"1. The date of the act, and the place where it was passed.

"2. The names, surnames and qualities of the contracting parties.

"3. A description of the immovable property which has been transferred, with all necessary details.

"4. The price of the transfer, whether paid in ready money, or on time, and in the latter case what the terms and conditions are."

In the very recent case of Life Ins. Co. of Va. v. Nolan, 181 La. 357, 159 So. 583, 584, our Supreme Court held that the recording of an act of acknowledgment and correction was just as good a reinscription of a mortgage as the recording of a complete copy of the original act of mortgage. The facts in the Nolan Case are stated in the opinion as follows:

"The facts are not disputed. On February 19, 1923, Joseph N. Nolan borrowed $20,000 from the Gulf Finance & Securities Company, and, in order to secure the loan and the interest thereon, granted in favor of the lender a mortgage on certain real property in the city of Baton Rouge. The mortgage was filed for record on February 20, 1923, and was recorded in mortgage book 97, folio 350, of the parish records.

"Subsequent to the execution of the mortgage, it was discovered that several of, the interest notes executed by Nolan and described in the original instrument were incorrect, and by another notarial act executed on February 18, 1924, the parties acknowledged the mortgage and made the necessary corrections therein. This act was filed for record on February 19, 1924, and recorded in mortgage book 113, folio 15, of the parish records.

"The mortgage was reinscribed on April 3, 1933, in mortgage book 248, folio 263, and, again, on October 30, 1933, in special mortgage book (provided for by Act No. 50 of 1924) No. 7, folio 499, of the parish records.

"Subsequent to the date of the execution by Joseph N. Nolan of the mortgage in favor of the Gulf Finance & Securities Company, Nolan granted four mortgages on the same and other property on the dates and for the amounts as follows, viz.: November 23, 1933, $13,700; November 13, 1926, $5,000; March 24, 1931, $3,000; and December 14, 1932, $1,144.19. These mortgages and the notes secured thereby became the property of the Louisiana National Bank, the intervener herein.

"The last principal note, which was for $12,000, of the series of notes secured by the mortgage granted by Joseph N. Nolan in favor of the Gulf Finance & Securities Company became due on February 1, 1933, and was not paid at maturity; and this suit was filed on July 18, 1933, by the Life Insurance Company of Virginia, which had acquired the mortgage and the notes secured thereby, to foreclose

the mortgage for the nonpayment of that note and the accrued interest."

Judge Rogers, the organ of the court in that case, said:

"It was not necessary, as contended by appellee, that the original act of mortgage should have been recopied in its entirety in the mortgage records, since the act of acknowledgment and correction, which was recorded in full, contained all the substantial recitals of the original act of mortgage.

"The law on this point is concisely stated in the syllabus of Poutz v. Reggio, 25 La. Ann. [637] 643, as follows, viz.: 'It has never been held that, to make a valid inscription of a conventional mortgage, an entire copy of the authentic act in which it is granted should be spread upon the public record. The object of registration is public notice, with reasonable certainty, of the substantial particulars of the mortgage; and when this is done, the purpose of the law is satisfied.'"

In the instant case the original mortgage was recorded the 24th day of October, 1924, and in the so-called act of renunciation or acknowledgment of October 24, 1932, reference is made to the original act of mortgage. The notes and the mortgaged property are described in detail. The intention to "revive and renew the said notes and the said mortgage" is clearly set forth in the act which also stipulates that "the said appearer further declares that he does hereby authorize, empower and request the Recorder of Mortgages in and for the Parish of Orleans to record this renunciation and renewal of said notes above described and make special mention hereof in the mortgage office, in margin of Book 1307, Fol. 289," the book and folio in which the original mortgage is inscribed.

▮ We can see no distinction in principle between the act of correction, the recording of which was held to have been a sufficient reinscription in the Nolan Case, and the recording of the act of renunciation, as it is called, in the instant case.

For the reasons assigned, the judgment appealed from is annulled, avoided, and reversed and it is now ordered that the rule herein taken by Baptiste Caumont be discharged at his cost.

Reversed.