On Rehearing
 

 FOURNET, Justice.
 

 Baptiste Caumont, third opponent, instituted these proceedings to enjoin the sale by the sheriff of certain real estate under seizure in a foreclosure via executiva by plaintiffs. The basis of his action was that the property did not belong to the seized debtor, the same having been adjudicated to him (third opponent) at the sale by public auction under a writ of fieri facias issued in execution of a judgment in his favor recognizing and ordering enforced a mortgage on the property.
 

 In answer to the rule nisi, plaintiffs denied third opponent’s allegations and, further answering, averred that his petition disclosed neither a cause nor a right of action. They also averred (1) that at the time they acquired the notes upon which they based their foreclosure proceedings, the third opponent’s mortgage had long since perempted and the title to the property, no longer being in the name of third opponent’s mortgagor, the reinscription of his mortgage could have no effect on the property; and (2) that third opponent’s mortgage, if any exists, is inferior in rank and secondary to theirs.
 

 On an appeal taken by plaintiffs, we set aside the judgment of the lower court granting third opponent a preliminary injunction, and the matter is now before us for reconsideration.
 

 While the case was pending on appeal here, Baptiste Caumont and Mrs. John W. Hite died. By orders of this court the sur
 
 *689
 
 viving widow and daughter of Baptiste Caumont, and the testamentary executrix of Mrs. Hite, Miss Margaret Zimmer, were made parties.
 

 On September 28, 1914, J. Sidney Char-bonnet, owner of certain real estate located at 2600 Chartres street in the City of New Orleans, executed a mortgage in favor of Francis D. Charbonnet, Jr., to secure a note in the sum of $2,500. The mortgage was duly recorded and the note was acquired by third opponents in due course. On February 8, 1922, J. Sidney Charbonnet, for and in consideration of the assumption of the payment of the mortgage note, transferred the mortgaged property to Francis D. Charbonnet, Jr. The act of sale was recorded in the conveyance records, but the assumption of the payment of the note by the purcháser was never recorded in the office of the Recorder of Mortgages.
 

 On August 16, 1933 the mortgage was reinscribed. Prior thereto, however, on April 5, 1933, Francis D. Charbonnet, Jr., had executed a mortgage containing the pact de non alienando in favor of Dewet E. Charbonnet, affecting the same property, to secure notes aggregating the sum of $7,000, which notes were subsequently acquired by Mrs. John W. Hite and Miss Carolina Schnurr, plaintiffs.' But this mortgage was only recorded on August 23, 1933, several days after third opponents’ was re-inscribed. On January 10, 1935, the property was adjudicated to third opponent Baptiste Caumont at public auction under a writ of fieri facias issued in execution of a judgment obtained by him via ordinaria against J. Sidney Charbonnet and Francis D. Charbonnet, Jr., in solido, recognizing and ordering enforced the mortgage dated September 28, 1914 for $2,500. On May" 31, 1935, plaintiffs proceeded via executiva to foreclose their mortgage against Francis D. Charbonnet, Jr. Whereupon, on June 16, 1937, these proceedings were filed.
 

 The record reveals that the interest on the mortgage note held’ by third opponent was paid to September following the date of the reinscription of the mortgage, and that in the act of mortgage securing plaintiffs’ notes the following reference was made by the notary: “The only mortgage against said property is the one for $2500.-00 [held by third opponents] recorded in Mortgage Office in Book 1353 at folio 43.” (Brackets ours.)
 

 The basis of the exceptions of no cause and no right of action filed by plaintiffs is (1) that third opponents have neither alleged nor proved that they have title to the property, and (2) that they failed to negative the existence of a valid mortgage in plaintiffs’ favor.
 

 The first point urged is without merit, as an examination of the proceedings in this case shows that the property was adjudicated on January 10, 1935, to third opponent Baptiste Caumont at public auction, which adjudication has, under the express provisions of the Code of Practice, “ * * * of itself alone, the effect of
 
 transferring
 
 to the purchaser all the rights and claims which, the party in whose hands it was seized might have had to the thing adjudged.” Article 690. (Italics ours.) See, also, Article 695 of the Code
 
 *691
 
 of Practice; Washburn v. Green, 13 La. Ann. 332; McCall v. Irion, 41 La.Ann. 1126, 6 So. 845; and Cook v. Martin, 188 La. 1063, 178 So. 881.
 

 The second ground is also without merit. We know of no law supporting that contention and counsel has cited none. Moreover, the exceptions were filed by plaintiffs as a part of their answer and were submitted after trial on the merits' and will be disposed of accordingly.
 

 “The registry preserves the evidence of mortgages and privileges during ten years, reckoning from the day of its date. * * *
 

 “The effect of the registry ceases in all cases, even against the contracting parties, if the inscriptions have not been renewed within the respective periods of time above provided, in the manner in which they were first made * * Article 3369, Revised Civil Code.
 

 This court, in interpreting Article 3369 of the Revised Civil Code, has repeatedly held that, as between the parties to the act, the failure to reinscribe a mortgage within ten years from the date of its original inscription in no way affects the existence of the mortgage or its rank, the reinscription having the effect of restoring to the mortgage the rank enjoyed at its first inscription. Shepherd v. Orleans Cotton Press Co., 2 La.Ann. 100; Bonin v. Durand, 2 La.Ann. 776; Byrne v. Citizens’ Bank, 23 La.Ann. 275; and Watson v. Bondurant, 30 La.Ann. 1. But as to third person who have, in the meantime, acquired adverse rights, the reinscribed mortgage takes its rank according to the date of its recordation. Executor of Liddell v. Rucker, 13 La.Ann. 569; Gegan v. Bowman, 22 La.Ann. 336; Byrne v. Citizens’ Bank, supra; and Norres v. Hays, 44 La.Ann. 907, 11 So. 462.
 

 But counsel for plaintiffs contends that third opponents’ mortgage, having been re-inscribed long after the ten year prescriptive period had elapsed, their mortgage was perempted and the property, at that time, no longer being in the name of J. Sidney Charbonnet, the mortgagor, but in the name of Francis D. Charbonnet, Jr., the reinscription could have no effect as to them, they being third parties to these transactions. In support of this contention the case of Watson v. Bondurant, 30 La.Ann. 1, is cited.
 

 The facts in the Watson case are succinctly stated in the concurring opinion as follows:
 

 “Daniel M. Bondurant left, as his heirs-at-law, three sons, Albert, John, and Horace, and a grandson, Walter E. Bondurant.
 

 “On the fourth of December, 1852, the whole of the property belonging to the succession was sold at auction, and bought by his three sons for $148,474. Two days after, on the sixth of said month, the deed from the sheriff to them was recorded, and it was not re-inscribed until the eighth of September, 1865. Since that date, more than eleven years have elapsed, and the re-inscription has not been renewed.
 

 “Of the price of said property, one fourth was due by the purchasers to Walter
 
 *693
 
 E. Bondurant, and was to be paid to him at his majority, on the fifth of March, 1862, with interest. That claim was secured by mortgage, containing the stipulation which has been and still is confounded for ‘the pact de non alienando.’
 

 “In 1854, on the thirtieth of November, Augustus C. Watson purchased from John Bondurant the land acquired by the latter and his brothers from their father’s estate, and subject to the mortgage of the minor Walter. On the fifth of August, 1872, said Watson sold to his sons, Augustus and Frank, the land thus acquired by him from John Bondurant, and, on the sixth of December, 1875, by purchase of his brother’s share, Frank Watson became the sole owner of the whole.
 

 “Walter. E. Bondurant brought suit against his uncles, to enforce his mortgage, and, on the fourteenth of November, 1867, obtained a judgment against them, with a recognition of said mortgage. Under an alias writ of fi. fa., issued from said judgment, the land bought by Frank Watson from his father and brother, was seized on the’fifteenth of June, 1875. * * * ”
 

 The court, disposing of the case, said:
 

 “The position of the parties was this: dating from the fourth December, 1852, a mortgage, properly inscribed, secured to the minor, Walter E. Bondurant, his one fourth of the estate inherited by him, or rather the price of this one fourth. This mortgage, in virtue of the inscription, bound the property for and during ten years, without regard to any subsequent changes in title or possession. .On the sixth of December, 1862, this inscription perempted and lost its effect, even against the contracting parties; and it would have been the duty of the recorder to have canceled and erased it on the application in writing of any party in interest. Act of 1843, Revised Statutes of 1870, sections 450, 3141, amending C. C., art. 3333 Rev.C.G, art. 3369. From the thirtieth November, 1854, Watson was the owner, and was in possession of the property in question. The mortgage which had affected the property no longer incumbered it in his hands, because ten years had elapsed without re-inscription. The mere failure to cancel the perempted inscription did not revive it. The qrticle of the Code says the inscription must be renewed in the same manner in which it was made. It was dead so far as the first inscription was concerned. The law, however, permits re-inscription; and this mortgage was re-inscribed on the eighth September, 1865 nearly three years after the first inscription had lost its effect even against the contracting parties.
 
 The re-inscription gave it effect as a mortgage of the date of that inscription; but at that time the property no longer belonged, to the debtors, the mortgagors; and it had no effect whatever against that property.”
 
 (Italics ours.)
 

 Under the express provisions of the Revised Civil Code “ * * * mortgages are only allowed - to prejudice third persons when they have been publicly inscribed on records kept for that purpose and in the manner hereafter directed.” Article 3342. “By the words third persons * * * are to be understood all persons who are not
 
 *695
 
 parties to the act or to the judgment on which the mortgage is founded.” Article 3343. “Consequently, neither the contracting parties nor' their heirs, nor those who were witnesses to the act by which the mortgage was stipulated, can take advantage of the non-inscription of the mortgage.” Article 3344. See, also, Seyburn v. Deyris, 25 La.Ann. 483; McDaniel v. Lalanne, 28 La.Ann. 661.
 

 In the instant case, Francis D. Charbonnet, Jr. (unlike the purchaser in the Watson v. Bondurant case, who was not a party to the act of mortgage and who in purchasing the property did so
 
 subject
 
 to the mortgage), was the mortgagee, and, in acquiring the property, assumed the payment of the debt secured by third opponents’ mortgage as the purchase price thereof. It is our opinion, therefore, that by his said acts he became personally bound for the debt, the same as the original mortgagor, and a party to the mortgage within the meaning and contemplation of the provisions of the Revised Civil Code, and that neither the inscription of the mortgage nor its reinscription was necessary to preserve the same as to him.
 

 It therefore follows that third opponents’ mortgage was properly and timely reinscribed prior to the recordation of plaintiffs’ mortgage and is, consequently, superior in rank.
 

 For the reasons' assigned, our original decree is annulled and set aside, and the judgment of the lower court is affirmed, appellants to pay all costs. The right to apply for a rehearing is reserved to appellants.