## BONDURANT *v.* WATSON.

1. This court enforces, as a rule of property applicable to Louisiana, the decision of the Supreme Court of that State, that a mortgage of lands has no effect as to third persons, unless it be inscribed in the proper public office, and that, save in the single case of a minor's mortgage upon the property of his tutor, every mortgage ceases to be effectual against third parties, unless it be reinscribed within ten years from the date of its original inscription, and that neither the pact *de non alienando* nor the pendency of a suit to foreclose dispenses with the necessity of so inscribing or reinscribing it.

2. A., a citizen of Louisiana, filed a bill in a court of that State, praying for an injunction to restrain B., who had recovered judgment against C. in that court, and sued out thereon a *fieri facias*, from levying the writ upon a tract of land whereof A. was the owner and actual possessor by a good and valid title from C. The judgment declares that an authentic act of mortgage, executed by C. and covering that and other tracts, was rendered executory, and that all the lands should be seized to satisfy it. The act was not reinscribed. A. was not a party to the judgment, nor was any demand made of, or notice given to, him. B. was a citizen of Mississippi, and filed a petition for the removal of the suit. *Held,* that the amount in controversy being sufficient, the suit was removable, under the act of March 3, 1875, c. 137, 18 Stat., pt. 3, p. 470.

3. The citizenship of the parties need not be averred in the petition for removal where it is shown by the record.

APPEAL from the Circuit Court of the United States for the District of Louisiana.

The facts are stated in the opinion of the court.

*Mr. Samuel R. Walker* for the appellant.

*Mr. Edwin T. Merrick* and *Mr. George W. Race, contra.*

MR. JUSTICE WOODS delivered the opinion of the court.

Daniel Bondurant died seised of a large plantation in the parish of Tensas, in the State of Louisiana. His estate descended to his three sons, Albert, Horace, and John, and to Walter E. Bondurant, his infant grandson.

In 1852, upon petition of the sons for a partition of the plantation, a decree of sale was made, under which it was sold, and struck off to them for the price of $150,000. Of this sum, Walter, the grandson, was entitled to one-fourth, namely, $37,500.

The sheriff, on Dec. 4, 1858, executed a deed to the sons, reserving therein a special mortgage and privilege on the lands in favor of Walter E. Bondurant for his share of the purchase-money.

In the act of sale, which was executed both by the sheriff and the purchasers, the latter bound themselves not to alienate, deteriorate, or incumber the property to the prejudice of the mortgage, an agreement known in the local jurisprudence of Louisiana as the pact *de non alienando*. The mortgage was recorded Dec. 6, 1852. The law of Louisiana required it to be reinscribed within ten years from that date. It was not reinscribed until September, 1865. The three sons of Daniel Bondurant divided the plantation between them. The part which is in controversy in this suit was set off to John Bondurant, who, in 1854, conveyed it to one Augustus C. Watson, Sen.

On Jan. 30, 1866, Walter E. Bondurant began an action against his uncles, Albert, Horace, and John Bondurant, in the District Court for the Parish of Tensas, to recover judgment against them for his part of the purchase price of said plantation, and to enforce his mortgage and privilege thereon. The court rendered a judgment in his favor for the sum of $37,500, with interest, and ordered, adjudged, and decreed that the authentic act of mortgage, which was the basis of the action, should be, and the same was thereby, rendered executory and ordered to be executed, and that the land described therein should be seized and sold to satisfy said judgment.

Upon this judgment a *fieri facias* was issued, directed to the sheriff of the parish. By virtue thereof he advertised for sale the plantation described in the mortgage, and struck off and sold it to Walter E. Bondurant, and executed to him a deed therefor.

Walter E. Bondurant thereupon brought an action in the United States Circuit Court for the District of Louisiana against Augustus C. Watson, Sen., to recover possession of that part of the plantation which had been sold to him by John Bondurant.

He recovered judgment for the land against Watson. That judgment was taken, by writ of error, to the Supreme Court of

the United States, where it was reversed on the sole ground that there had been no actual seizure of the premises by the sheriff before the sale.    See *Watson* v. *Bondurant*, 21 Wall. 123.

In the mean time Walter E. Bondurant died.    The judgment in his favor in the District Court for the Parish of Tensas was revived in the name of his widow, Ella F. Bondurant, his testamentary executrix and the tutrix of his minor son.

At her instance another *fieri facias* was issued on the judgment of the District Court for the Parish of Tensas, and placed in the hands of the sheriff of that parish.    By virtue of the writ he seized that part of the plantation which had been sold to Augustus C. Watson, Sen., and advertised the same for sale. Thereupon Frank Watson, the appellee, on June 25, 1875, filed his petition in the District Court for the Parish of Tensas against the sheriff and Ella F. Bondurant, executrix and tutrix. He averred that his "immediate author," Augustus C. Watson, Sen., acquired the land in question by a good and valid title translative of property from John Bondurant, on Nov. 30, 1854; that said Augustus C. Watson, Sen., held said lands by notorious public and uninterrupted possession, in good faith as owner, from Nov. 30, 1854, until Aug. 5, 1872, when he transferred his title and possession, by deed of that date, to the petitioner, Frank Watson, and his brother, A. C. Watson, Jr., and that by deed dated Feb. 6, 1875, A. C. Watson, Jr., conveyed all his estate in said land to the petitioner, Frank Watson.

He further averred that the sheriff of Tensas Parish, acting under a writ of *alias fi. fa.* issued on the said judgment recovered by Walter E. Bondurant against Albert, John, and Horace Bondurant in the District Court of said parish, had illegally seized the tract of land which was held and claimed by the petitioner under the deeds of conveyance already mentioned, and would advertise and sell the same, unless restrained by injunction.

The petition further alleged that said act of Dec. 4, 1854, which reserved the mortgage and privilege on said plantation in favor of Walter E. Bondurant for $37,500 had not been reinscribed within ten years from the date of its original registry in the mortgage records, and it had, therefore, ceased to have

any force or effect as a mortgage and privilege on said tract of land; that at the time of the institution of the suit of said Walter and others, in which the judgment was recovered by virtue of which said *fieri facias* was issued, said Augustus C. Watson, Sen., was and for many years previous had been in public possession of said property as owner, yet he was not made a party to said suit, which was *via ordinaria*, nor were any demands or notices given him as third possessor.

The petition, therefore, claimed that the seizure of the prop erty by the sheriff was illegal, and prayed an injunction against Ella F. Bondurant, executrix and tutrix, and against the sheriff, restraining them from proceeding any further with the said writ of *fieri facias*, so far as it related to the lands claimed by the petitioner.

The injunction prayed for was granted by the court in which the petition was filed, after notice to the sheriff and Mrs. Bondurant.

Thereupon, on Oct. 18, 1875, Mrs. Bondurant filed her petition, verified by her oath, in which she prayed for a removal of the cause to the United States Circuit Court for the District of Louisiana. In her petition she averred that she was a citizen of the State of Mississippi, and was, in her capacity as tutrix and executrix, defendant in a civil suit pending in that court, in which the matter in dispute exceeded, exclusive of costs, the sum of $500, and in which Frank Watson, who was a citizen of Louisiana, was plaintiff.

This petition was accompanied by a bond in the penal sum of $250, conditioned according to law, and executed by the petitioner and two sureties.

The petition for removal was denied by the State court. Nevertheless Mrs. Bondurant, within the time required by law, filed in the United States Circuit Court a transcript of the proceedings of the State court, beginning with the issuing of the *fieri facias*, which the petition of Watson was filed to enjoin.

The Circuit Court took jurisdiction of the case and directed it to be placed on the equity side of the docket. Thereupon Mrs. Bondurant filed her answer and amended answer, to which the petitioner, Watson, filed his replication. Upon the issue thus made, voluminous proofs were taken, and upon final hear-

ing the Circuit Court made perpetual the injunction which had been granted by the State court. That decree is now here on appeal taken by the defendant, Mrs. Bondurant.

The District Court for the Parish of Tensas, claiming that the cause still remained in that court, notwithstanding the attempt of the defendant to remove it to the United States Circuit Court, proceeded with the cause to final hearing, and also made perpetual the injunction which it had granted. This decree was affirmed on appeal by the Supreme Court of Louisiana. See *Watson* v. *Bondurant*, 30 La. Ann. 1, pt. 1.

The defendant brought up that decree also by writ of error to this court.

By agreement of counsel, the records in both cases have been submitted and argued together. Watson, the complainant in both cases, claimed that the suit was not a removable one, and that there was no effectual removal thereof to the Circuit Court, and that the State courts alone had jurisdiction. The defendant denied the jurisdiction of the State court, and insisted that the case was a removable one, and had been removed to the Circuit Court, which thereafter alone had jurisdiction. The case brought here from the State Supreme Court having been dismissed for want of a writ of error (see *Bondurant, Tutrix*, v. *Watson, supra*, p. 278), it becomes necessary to decide the question of jurisdiction.

On this question the first contention of Watson, the complainant, is that the petition of Mrs. Bondurant for the removal of the case, which was filed Oct. 18, 1875, does not aver that at the commencement of the suit, which was June 25, 1875, she was a citizen of the State of Mississippi.

Whether, under the act of March 3, 1875, c. 137, to regulate the removal of causes from the State courts, such an averment is necessary, is a question which was expressly reserved by this court in the case of *Insurance Company* v. *Pechner* (95 U. S. 183), and which it has never decided. We do not find it necessary to decide it now, for the evidence in the record satisfies us that Mrs. Bondurant was a citizen of Mississippi on June 25, 1875, when the proceeding against her was begun by Watson. Whether the petition avers the fact or not is immaterial, provided the fact is shown to exist by any part of the record.

*Gold-Washing and Water Company* v. *Keyes,* 96 id. 199.; *Briges* v. *Sperry,* 95 id. 401; *Robertson* v. *Cease,* 97 id. 646.

The record shows that her husband, of whose will she was the executrix, was at the time of his death, and for many years before had been, a citizen of the State of Mississippi, residing at Natchez. She was, therefore, a citizen of Mississippi at the time of her husband's death, which took place before the filing by Watson of the petition in this case, on June 25, 1875. In October, 1875, she swears that she was then a citizen of Mississippi. At and before that time she had been sojourning with her father in New Orleans, but, as the record indicates, her residence there was transient and temporary, and with a purpose, declared at the time, of retaining her citizenship in Mississippi. She could not lose her citizenship in Mississippi without a change of residence *animo manendi,* and her purpose was better known to herself than to any one else.

The fact that Mrs. Bondurant took out letters testamentary on the will of her husband in the parish of Tensas without giving bond, as she would have been required to do had she been a non-resident of the State, does not, in our judgment, overcome her affidavit that she was a citizen of Mississippi, and the presumption that, having once been a citizen of that State, her citizenship continued. The proceedings in the Probate Court of Tensas Parish were conducted entirely by her attorney, and their details were not necessarily known to her.

We think the fact of her citizenship in Mississippi, at the time of the commencement of Watson's suit against her, sufficiently appears by the record, and this supplies the want of an averment of the fact in her petition for the removal of the case.

The next claim of Watson is, that the suit removed was merely auxiliary and incidental to the original case of *Walter E. Bondurant* v. *Albert Bondurant and Others,* and was not, therefore, removable.

In this view we do not concur. The case which was removed had all the elements of a suit in equity. The petition filed in the State court sought equitable relief, which no court strictly a court of law could grant. Citations were issued and served upon the defendants. When the case was transferred to the Circuit Court, it was placed on the equity side of the docket.

An answer and a replication were filed, testimony was taken, and a decree made upon final hearing according to the equity practice. The controversy in the original cause between Walter E. Bondurant and Albert Bondurant and others had been ended by a final judgment. The case between Watson and Mrs. Bondurant had its origin in that judgment, but it was a new and independent suit between other parties and upon new issues. It was a suit in which the plaintiff sought to be protected against a judgment, to which he was not a party, by which his property had been specifically condemned to be sold to satisfy a claim against others, and not against him.

He insisted that the mortgage on which the judgment was founded was not a lien on the property claimed by him. To prevent being turned out of possession of his own land, an l a cloud being cast on his title by a seizure and sale under the judgment of the State court was the purpose of his suit. It could not be called incidental or auxiliary to the original case. It was a new and independent controversy between other parties. It filled all the requisites of the law for the removal of causes. It was a suit of a civil nature in equity, in which the matter in dispute, exclusive of costs, exceeded the sum or value of $500, and in which there was a controversy between citizens of different States.

No reason is perceived why a party to such a controversy should not enjoy his constitutional right of having his case tried by a court of the United States.

The case of *Bank* v. *Turnbull & Co.* (16 Wall. 190), relied on by the appellee, is not in point. That was a statutory proceeding to try in a summary way the title to personal property seized on execution. It was nothing more than a method prescribed by the law to enable the court to direct and control its own process, and, as decided by this court, was merely auxiliary to, and a graft upon, the original action.

It is next claimed that the case was not removable because its purpose was to obtain the writ of injunction to stay proceedings in a State court, which a court of the United States is forbidden to grant by sect. 720 of the Revised Statutes.

It is to be observed that the injunction had already been

granted by the State court before the application for removal
was made.   The interest and purpose of Mrs. Bondurant, who
asked for the removal, was to get the injunction dissolved.   If
Watson had filed his petition for injunction in the State court,
and before it was allowed had petitioned for a removal of the
cause to the Circuit Court, with the design of applying to that
court for his injunction, the objection to the right of removal
would have force.   That would have been an evasion of the
statute.   But that is not this case.

The act of March 3, 1875, provides that all injunctions had
in the suit before its removal, shall remain in full force and
effect until dissolved or modified by the court to which the suit
shall be removed.   It provides for removals, without making
any exception, of cases in which an injunction has already been
allowed to stay proceedings in a State court.   It would not be
according to the well-settled rules of statutory construction to
import an exception into this statute from a prior one on a dif-
ferent subject.

We are of opinion, therefore, that the case was one remov-
able under the act of March 3, 1875, and that the Circuit Court
obtained jurisdiction by the proceedings for its removal.

The merits of the case have been conclusively settled by the
Supreme Court of Louisiana.

Watson, the plaintiff, claimed that the parcel of land con-
veyed to him by John Bondurant was freed from the lien of
the mortgage to Walter Bondurant, by the failure of the latter
to have it reinscribed within the ten years from the date of its
original registry.

The contention of the defendant, Mrs. Bondurant, is that re-
inscription was not necessary to preserve the lien of the mort-
gage on Watson's land, because he was charged with notice by
the pact *de non alienando* contained in the mortgage, and be-
cause the mortgagee, Walter E. Bondurant, being a minor, the
mortgage to him did not require reinscription to preserve its
lien.

These questions have been settled against the appellant by
the Supreme Court of Louisiana.

That court has decided that, under the positive law of Louis-
iana, as contained in the code and statutes, nothing supplies

the place of registry, or dispenses with it, so far as those are concerned who are not parties to the mortgage, and that when ten years have elapsed from the date of inscription without reinscription, the mortgage is without effect as to all persons whomsoever who are not parties to the mortgage. *Adams & Co.* v. *Daunis,* 29 La. Ann. 315, and cases there cited.

In the case of *Watson* v. *Bondurant* (30 La. Ann. 1, pt. 1), the same court held that no mortgage has any effect as to third persons unless recorded; and, save in the single case of a minor's mortgage on the property of his tutor, every mortgage ceases to have effect, except as to the parties to it, unless reinscribed within ten years from the date of its original inscription, and that neither the existence of the pact *de non alienando* in a mortgage, nor the pendency of a suit to foreclose the same, obviates the necessity of its inscription or reinscription.

The decisions above cited, establishing as they do a rule of real property in the State of Louisiana, are binding on this court, and are conclusive of this case. *Suydam* v. *Williamson,* 24 How. 427; *Jackson* v. *Chew,* 12 Wheat. 162; *Beauregard* v. *City of New Orleans,* 18 How. 497.

The decree of the Circuit Court must, therefore, be affirmed, and it is

*So ordered.*