COX et al. v. WALLACE.

(Circuit Court of Appeals, Fourth Circuit. November 5, 1914.)

No. 1285.

BANKRUPTCY ⊜⇒143 — PROPERTY PASSING TO TRUSTEE — ESTATE BY THE CURTESY.

Under the law of Virginia, as established by decision that, where a husband has conveyed or caused to be conveyed to his wife land which becomes her statutory separate estate, a presumption arises from the nature of the transaction of an intent on his part to relinquish all his interest in the property, present or prospective, unless some interest is reserved in the conveyance itself, a husband, who had paid the consideration for land which he caused to be conveyed to his wife without reservation, after her death has no interest in such land as tenant by the curtesy, which on his subsequent bankruptcy passes to his trustee, and it is immaterial that a part of the consideration, for which she gave a trust deed at the time of the conveyance, was paid by him after her death, but when he was solvent.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 194, 201, 202, 213–217, 223, 224; Dec. Dig. ⊜⇒143.]

Appeal from the District Court of the United States for the Eastern District of Virginia, at Richmond, in Bankruptcy; Edmund Waddill, Jr., Judge.

In the matter of Fred Cox, bankrupt; Maxwell G. Wallace, trustee. From an order of the District Court, Levey C. Cox, Snow S. Cox, and Mamie J. Casper appeal. Reversed.

Robert H. Talley, of Richmond, Va., for appellants.

John B. Lightfoot, Jr., and S. S. P. Patteson, both of Richmond, Va., for appellee.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

KNAPP, Circuit Judge. The record presents this question: Has the bankrupt, Fred Cox, an interest as tenant by the curtesy in the real estate which belonged to his wife at the time of her death?

The real estate in question, which consists of about three acres of improved land in Henrico county, Va., near the city of Richmond, was conveyed to Fannie V. Cox, wife of the bankrupt, on May 24, 1905. The consideration received by the grantors was $2,500, all of which was paid at the time. Of this sum $1,500, or thereabouts, was paid by Cox out of his own funds, and the balance raised on the note of Mrs. Cox, secured by deed of trust on the property. Mrs. Cox died intestate December 2, 1906, and was survived by her husband and three children. The note and deed of trust were then outstanding and unpaid. On February 17, 1908, Cox paid this note with his own money and had the trust deed released to his wife, although she was dead, as it seems he might do under a Virginia statute. Something over five years later on June 16, 1913, Cox was adjudged a voluntary bankrupt, and shortly afterwards a trustee was appointed. The trustee claimed that Cox had an interest in the land in question as tenant by the curtesy, and he sought to recover that interest as an asset of the bankrupt's

estate. The children claimed that they inherited this property in fee
simple upon the death of their mother, and that neither the bankrupt
nor his trustee had any interest therein. Accordingly they filed their
petition in the bankruptcy proceedings for an order to that effect. The
matter was thereupon referred to the referee in bankruptcy, who heard
the evidence and made a report that the bankrupt had no interest as ten-
ant by the curtesy or otherwise in this real estate of his deceased wife.
This report contains a statement of the facts, and discusses quite fully
the question of law involved. Upon review of the referee's report,
the District Court held that the bankrupt had the interest claimed by
the trustee, and ordered the amount to be ascertained. From this deci-
sion the heirs have appealed to this court. No opinion was filed, and
we are therefore not advised of the grounds upon which the learned
District Judge based his conclusion.

The only witness before the referee was the bankrupt himself. He
testified in substance that he caused this property to be conveyed to his
wife, and paid $1,500 of the purchase price from his own funds, with
the purpose and intent of giving the same outright to his wife. The
record quotes him as saying: "I gave it to her absolutely." In the
referee's report the transaction is summed up as follows:·

"It plainly appears—in fact there is no dispute as to the facts in this mat-
ter—that Cox paid for this property out of his own funds, but had it con-
veyed to his wife, a portion of the purchase price being paid when the deed of
conveyance was made to his wife and the balance of $1,104 being paid sub-
sequent to her death; and upon this statement of facts both the heirs of Fan-
nie V. Cox and the bankrupt's trustee base their respective claims to this
property."

Accepting this version of what took place and the purpose which
Cox had in view, since nothing was shown of contrary import, we
come at once to the question to be decided. Whatever may be held
in other jurisdictions, the law to be followed in this case is the law
of Virginia. Bondurant v. Watson, 103 U. S. 281, 289, 26 L. Ed. 447;
St. Anthony Falls Water Power Co. v. St. Paul Water Com'rs, 168 U.
S. 349, 18 Sup. Ct. 157, 42 L. Ed. 497. And it seems to be the settled
law of that state, under existing statutes, that the husband can convey
real estate directly to his wife, and in so doing divest himself of any
interest therein, the same as though the conveyance were made to a
stranger. The rule is clearly laid down that the execution of such a
conveyance operates by the act itself to deprive him of any right of
curtesy in the lands transferred, although all the common law requisites
of that right may thereafter exist. Thus, in Jones v. Jones' Executor
et al., 96 Va. 749, 752, 32 S. E. 463, the Supreme Court of Appeals
says:

"But where the equitable separate estate is created by the husband, the in-
tention to exclude is presumed or results from the transaction itself, except so
far as he may have reserved his marital rights in the instrument creating the
separate estate. The law attaches to every absolute conveyance complete
alienation of the entire interest of the grantor, so far as the alienation is
permitted by the principles of law and equity. Upon this principle, the law
presumes that a husband, by an absolute conveyance creating an equitable
separate estate in the wife, intended to vest in her his entire interest in the
subject conveyed, including all his marital rights, present and future, and

the conveyance is so construed. Consequently a husband has not an estate as tenant by the curtesy in land conveyed by him in such manner as to create an equitable separate estate in his wife, whether the conveyance be made directly to her, or to another person for her, in the absence of a reservation in the conveyance of his right thereto at her death."

The underlying basis of this decision, as we understand it, is that a presumption arises *from the nature of the transaction* of an intent on the part of the husband to relinquish all his interest in the property, present and prospective, unless some interest is reserved in the conveyance itself. But what difference does it make, under this rule of law and the reason upon which it rests, whether the husband conveys to his wife land then owned by himself, or causes to be conveyed to her the land of another, for which he pays the entire consideration? If in the one case he grants so completely that no interest survives the decease of his wife, upon what theory can it be claimed that in the other case he acquires an inchoate right which upon her death ripens into a life estate? With reference to the retention of any interest by the husband, we find it impossible to distinguish between his direct conveyance to his wife and a conveyance to her by a third party at his instance. In the latter case, quite as much as in the former, the presumption of intent arises from the nature of the transaction. And this appears to be decided by the Virginia court of last resort in the later case of Ratliff v. Ratliff, 102 Va. 887, 47 S. E. 1009, where the proposition is stated as follows:

"This court has held that a husband is not entitled to curtesy in the equitable separate estate of his wife, which he has created for her benefit; that he is excluded by the nature of the transaction. Jones v. Jones, 96 Va. 749, 32 S. E. 463. We are of opinion that the reasons given in the case cited for excluding the husband from curtesy in the equitable separate estate, which he has created, with equal force deny his right to curtesy in lands that he has conveyed, or caused to be conveyed, to her without reservation of his marital rights, where such lands constitute, as in the case at bar, statutory separate estate."

This subject is ably discussed and the same views expressed in a thoughtful monogram entitled "Burk's Separate Estates." The conclusion of the learned author is summed up, at page 18, in the following paragraph:

"The husband's marital rights are not only excluded in deeds made by himself to his wife, or to a third person for her benefit, but also in deeds made by third persons, where the consideration moves from the husband and the conveyance is at his instance. In such case the conveyance stands on the same footing as if it had been made by the husband himself."

But the appellee argues that the property rule in question applies only to a completed gift, and that this gift to the wife was not completed, because the husband did not at the time pay the full purchase price. We do not perceive the force of this contention. How does the fact that part of the consideration was left unpaid affect the intention of the husband, which is the point in dispute, to donate this property to his wife, or operate to make the amount of his payment any less a gift to her? It is altogether illogical to say that the husband may create for his wife a separate estate in lands conveyed to her, if the whole consideration is then paid by him, but cannot relinquish his curtesy

rights if a part of the purchase price remains unpaid. We entertain no doubt that in Virginia a husband can convey real estate to his wife subject to an existing incumbrance, and completely divest himself of any interest, present or future, in the equity transferred to her. And if this may be done with land which he himself owns, subject to an outstanding lien, it seems beyond question that he may do the same thing in respect of land conveyed to her at his request by a stranger. Surely it can make no difference whether the real estate purchased is already incumbered, or whether it is pledged by the wife as security for the balance of the consideration. In our judgment, the inheritance of appellants is not made subordinate to a life estate in their father by the circumstance that he did not pay the entire purchase price when he caused this property to be conveyed to his wife.

Nor do we see any reason why Cox could not after his wife's decease pay off the debt which she had secured by a deed of trust on this property. He was solvent at the time, and had the right as against subsequent creditors to do what he pleased with his money. The discharge of this obligation inured to the benefit of his children and was in effect a gratuity to them. If it had happened that the interest of a tenant by the curtesy survived to him upon the death of his wife, he would have been at full liberty to convey that interest to the appellants, and we are convinced that he was equally at liberty to free their inheritance from the lien by which it was then incumbered.

Applying the law of Virginia to the facts found by the referee, which are wholly undisputed, we are constrained to hold that the bankrupt has no interest as tenant by the curtesy or otherwise in the real estate in question. It follows that the decree appealed from must be reversed, and the matter remanded for further proceedings not inconsistent with this opinion.

Reversed.