## McNEIL et al. v. CONNECTICUT FIRE INS. CO. OF HARTFORD, CONN.

District Court, W. D. Tennessee, W. D. January 20, 1928.

No. 982.

1. **Insurance ⟺143(5)—Insured cannot claim mutual mistake in fire policy in his name alone, covering property owned with wife by the entirety and containing sole and unconditional ownership clause.**

Insured cannot claim mutual mistake of fact, where both he and agent knew fire policy contained sole and unconditional ownership clause and also knew that the policy was made out in insured's name alone, whereas he was owner with wife by the entirety.

2. **Courts ⟺367(1)—State rules of real property bind federal courts.**

A rule of real property, established by decision in a state, is binding on the federal courts.

3. **Insurance ⟺282(5)—Husband, in Tennessee is "sole and unconditional owner" of real property held with wife by the entirety, within terms of fire policy.**

Under the law of Tennessee, which on that subject is the common law, the interest of a husband in real property, title to which is held by him and his wife by the entirety, is "unconditional and sole ownership," for purposes of insurance.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Sole and Unconditional Ownership.]

In Equity. Suit by Errol McNeil and others against the Connecticut Fire Insurance Company of Hartford, Conn. Decree for complainant.

Longstreet Heiskell, of Memphis, Tenn., for plaintiff McNeil.

R. Lee Bartels, of Memphis, Tenn., for defendant.

ANDERSON, District Judge. The complainant herein is Errol McNeil, a citizen and resident of Fayette county, Tennessee, and the respondent is a foreign fire insurance company incorporated under the laws of Connecticut, and a sum in excess of the jurisdictional amount is involved. The suit began in the chancery court of Shelby county, Tennessee, and was removed to the United States District Court by respondent. It was tried on the equity side, because the bill asks for equitable relief; i. e., the reformation of an insurance policy on the ground of mutual mistake in stating the ownership of the property insured and subsequently destroyed by fire. But in reality it turns on the purely legal question of whether "the sole and unconditional ownership in fee" clause of the standard fire insurance policy was breached, which was the sole defense raised in the trial of the case, and the subsequent arguments, oral and written.

### Facts.

The facts are as follows:

Errol McNeil is a telegraph operator, married, with a wife and one child. His wife has no property, and no separate income or source of income. In 1925 he purchased out of the savings from his salary a residence in Somerville, Tenn. He took title to this property in the name of himself and wife, Lillian McNeil, as "tenants by the entirety." While in the courthouse having the deed registered, he was solicited by a young woman insurance agent for the fire insurance on his new home, and he gave her the business. A few days later she sent the policy to him, made out in the name of E. McNeil, and in the policy was the following clause:

"This entire policy shall be void if the interest of the insured be other than unconditional and sole ownership, or if the subject of insurance be a building on ground not owned by the insured in fee simple."

At the end of the first year the young woman agent called up McNeil and solicited the renewal, obtained it, and remailed the policy to him, made out, as the first one, to E. McNeil, with no reference to Lillian McNeil. McNeil paid the renewal premium;

some months later the house took fire and was totally destroyed. The testimony shows that to rebuild the house as it stood would cost in the neighborhood of $10,000.

The insurance company does not contend that, if the policy had been asked for in the name of E. and Lillian McNeil as tenants by the entirety, it would have refused to write it, or that the premium would have been greater, or the risk, as a matter of fact, contradistinguished from law, any greater, but rests on two propositions: (1) That the title of McNeil as tenant with his wife by the entirety was not the sole and unconditional ownership required by the policy; and (2) that, the title not being in McNeil as sole and unconditional owner, the policy under its plain terms and provisions is void.

### Mutual Mistake.

[1] The prayer for a reformation of the policy on the ground of "mutual mistake" can be disposed of summarily, for the reason that there was no mutual mistake. The young woman agent knew she made out the policy in the name of E. McNeil, and the complainant knew that the policy was made out in his name. McNeil presumably knew the policy contained the "sole and unconditional ownership" clause, and certainly knew that the title to the insured property was in himself and wife as tenants by the entirety. The mistake, if any, was a mistake of law, in assuming that under the law of Tennessee a husband is the sole and unconditional owner of property held by him and his wife as tenants by the entireties, for insurance purposes.

[2] Therefore the sole question left for consideration is this: "What is the title of a husband to property held by him and his wife as tenants by the entirety, under the law of Tennessee?" This court, of course, is bound by the Tennessee decisions as to the nature and character of the title to property in Tennessee. The United States Circuit Court of Appeals for this, the Sixth, circuit, expressly so held in Sims v. American Insurance Co., 296 F. 115. This opinion, by the way, was written by the present presiding judge of this circuit, was on appeal from this District Court, and involved the same "sole and unconditional ownership" clause as is invoked in this case, and it held in effect:

"It is also said that the existence of any liability was conditioned upon the position by the insured of the 'sole and unconditional ownership,' and that the statute does not purport to modify or affect this condition, and a Massachusetts case is cited (Ballard v.

Globe, 237 Mass. 34, 129 N. E. 290), apparently construing an identical statute in that state, and holding that the existence of an outstanding legal title was a good defense. *Here again we find ourselves concluded by the Tennessee decisions.* Without quoting from them at length, they impliedly, if not expressly, hold,· and approve other cases which directly rule, that the purchaser under such a contract as here appears, having paid or being liable for the entire purchase price, is the *equitable owner* of the property and is *entitled to call himself,* for insurance purposes, the *sole and unconditional owner.* While these cases are construing insurance contracts, they are nevertheless *declaring the nature and character of the title* which the contract vendee has to property, real or personal, having°a situs in Tennessee. This determination of the character of this title would affect other contracts as well as those of insurance, and it is binding upon the federal courts." Bondurant v. Watson, 103 U. S. 281, 26 L. Ed. 447, Sims v. Am., etc., Ins. Co. (C. C. A.) 296 F. 117.

This is an amplification of the rule in the above-cited case of Bondurant v. Watson, in which the Supreme Court of the United States used the following language:

"The decisions above cited, establishing as they do a rule of real property in the state of Louisiana, are binding on this court, and are conclusive of this case."

So let us examine the Tennessee decisions as to tenants by the entirety, for they are, if they establish the nature of the title, "binding on this court and conclusive of this case."

Tennessee Law as to Tenants by Entirety.

[3] The law of Tennessee, as to tenants by the entirety is purely the old common law. In this age of the Nineteenth Amendment, rights of women, feminism, women office holders, and general emancipation of the sex, it is almost shocking to learn that in one form of conveyancing, "the husband and wife are as one person in law," and the husband is that one person; "the legal existence of the wife" being "incorporated into that of the husband."

Ames v. Norman, decided in 1857, and reported in 4 Sneed (36 Tenn.) 683, 70 Am. Dec. 269, very fully sets out the Tennessee, and of course, the common law as to tenants by entirety. Judge McKinney delivered the opinion of the court and Judge McKinney is frequently referred to in later Tennessee decisions as a great common-law Judge. Says the Supreme Court of Tennessee in that case in describing this estate:

Page 691: "First. By the common law, the husband and wife are.as one person in law; the legal existence of the wife is incorporated into that of the husband; and though, in modern times, exceptions to this doctrine have been introduced, the general principle still exists. As one of the necessary results of this unity of persons in husband and wife, it has always been held that where an estate is conveyed or devised to them jointly, they do not take in joint tenancy; constituting one legal person, they can not be vested with separate or separable interests; they are said, therefore, to take by entireties; that is, each of them is seized of the whole estate, and neither of a part. * * * "

Page 692: "From the peculiarity of this tenancy, the unity and indivisibility of the seizin, there is some confusion in the cases respecting the power of the husband alone to make any conveyance or disposition of the land thus held during their joint lives, and also as to the right of creditors of the husband· to subject the same to the satisfaction of the husband's debts. *But upon examination of the authorities it appears to be settled that during their joint lives the husband may dispose of the estate.* He may lease or mortgage it, ·or it may be seized and sold upon execution for his debts. The doctrine, properly understood, is that the husband, without the wife's joining him in the conveyance, can not alien the estate, so as to affect the interest of the wife in case she survives him, as in that event she will be entitled to the whole. * * * "

Page 693: "It seems, therefore, that notwithstanding the peculiar nature of this tenancy, the husband, during the coverture, acquires substantially the same rights, and power of disposition of the estate thus held, that he does in regard to the wife's individual estate owned by her at the time of her marriage. Consequently it follows that the husband, without the consent or concurrence of the wife, can charge such estate at law with his debts; that he may transfer it; that it may be seized and sold by his creditors. But the assignee of the husband, or purchaser at execution sale, can acquire no other or greater interest than was vested in the husband; and, consequently, *he holds in subordination to the contingent right of the wife, who, in case she survives the husband, becomes absolute owner of the whole estate.* So, on the other hand, if the husband survives, the purchaser from him or at execution sale becomes owner in fee of the entire estate. [Rogers v. Grider,] 1 Dana, 242; [Barber v. Harris,]

15 Wend. 615; [Jackson v. McConnell,] 19 Wend. 175 [32 Am. Dec. 439.]   *   *   * "

Page 697: "The defendant by his purchase became invested with the right of the husband as it existed at the time of the sale; that is, a right to occupy and to enjoy the profits of the land as owner during the joint lives of the husband and wife, subject to the contingency that, if the complainant survives her former husband, his estate will then terminate, but, if the husband survives, he will become absolute owner of the whole estate."

In other words, in Tennessee the sole interest of the wife in an estate by entireties is a contingent right of survivorship. Otherwise the ownership of the husband is absolute and his control complete.

To the same effect, see Taul v. Campbell, 7 Yerg. (15 Tenn.) 319, 27 Am. Dec. 508, decided in 1835. In that case, where land was held by husband and wife by entireties, the wife predeceased the husband, and her heirs set up a claim to what they alleged to be her share. The court held (page 333): "The effect of a deed for land to husband and wife has been settled beyond controversy by the common law for centuries. They take but one estate, as a corporation would take, being by the common law deemed but one person."

Turning to more modern cases, Gill v. McKinney, 140 Tenn. 549, page 558, 205 S. W. 416, 418, decided: "The estate is an incident of marriage which grew out of the legal union of husband and wife. It arose from the disability of the wife on account of marriage, and could not exist without it. Because she had no legal existence she could not take an equal moiety with her husband, but being named with him as grantee in the deed, it was so unjust for her not to take it at all, the judges thought she must take in event she survived her husband. In that case her legal existence would be restored to her," etc. *   *   * "So the estate is a creature of the common law and is an incident of marriage." In another portion of the decision the court quotes Ames v. Norman, 4 Sneed, 683, 70 Am. Dec. 269, cited above, with approval, pays a tribute to the common-law learning of Judge McKinney, and says: "The above description of such an estate was accepted as the law in this state (Tennessee) and in so far as we are advised it has never been doubted since."

This court knows of nothing since 1917 which would change the nature of the estate in Tennessee.

In Hux v. Russell, also decided in 1917, reported in 138 Tenn. 272, 197 S. W. 865, a building on property owned by husband and wife as tenants by entirety was damaged in its rental value by an explosion of dynamite, and the husband alone brought suit to recover damages. It was held that the recovery was a personal demand on the husband's part. "The husband could maintain action of trespass or case without joining his wife," etc.

For a general description of the common-law estate by entirety, which is identically the Tennessee estate by entirety, see 13 R. C. L. 1125, art. 144:

"In this regard it must be remembered that at common law a husband by marriage acquires, during coverture, the usufruct of all the real estate which his wife has, in fee simple, fee tail, or for life; that he has the further right to reduce her personal estate to his possession, to sue for her chattels and upon her choses in action in his own name, and to dispose of her personal property as he may think fit. The same power which enables a husband to obtain possession and control of the wife's estate, when held by her in severalty, entitles him to a similar power over her interest in like property held by herself and husband in entireties. *Therefore, on principle, and it is generally so held at the common law, the husband could dispose of the possession of real estate held by entireties, and he could mortgage and otherwise incumber such real estate; and his grantee or mortgagee thereby acquired rights which were paramount to the rights of the wife during the life of the husband, and subordinate only to her claim as survivor.* So it is held that the husband has the right to make a lease which will be good against the wife during coverture and will fail only in the event of his wife surviving him, and a lease by the husband alone has been held sufficient to support ejectment though the wife did not join in the lease."

So in Tennessee a husband owning realty by the entirety may mortgage it, lease it, transfer possession, sell it without the wife joining in the conveyance, subject, of course, to the risk the purchaser runs of the contingent right of the wife becoming vested by the prior death of the husband, collect all rents, take all profits, sue alone in trespass or case, and, if he die pending the suit, the recovery passes to his estate, and not to the surviving wife, and act in all matters as though he had a sole and unconditional title to the property.

Is insuring the property the one exception to his "sole and unconditional ownership"? I think not. If he can rent it, sell

it, give it away, enjoy its profits, sue alone for damages to it, and the recovery pass to his personal representative, why can he not insure it in his name? Is there any reason why a different rule should be applied to an insurance transaction than to the other incidents of ownership?

What is the reason of the "sole and unconditional ownership" clause? Says 26 Corpus Juris, 172, art. 209:

"The ownership of insured is sole and unconditional when no other person has any other interest in the property as owner, and the quality of the estate is not limited or affected by any condition. In other words, the interest of insured must be completely vested, and of such a nature that he alone will sustain the entire loss if the property is destroyed. If the insured has, under claim of right, the exclusive use and enjoyment of the entire estate in the property, without assertion of adverse title by another, his interest is properly described as sole and unconditional ownership, although his title may be defective."

Applying the above statement of the law to the instant case, what do we find? First, that the entire loss must fall on Errol McNeil. The property was paid for out of his own money, and, if restored, must be restored by his own money. Second, clearly and unquestionably he has "under claim of right," according to all the Tennessee decisions and under the common law, "the exclusive use and enjoyment of the entire estate in the property" (subject to the contingent right of survivorship in the wife), without assertion of adverse title by another. Does not this make him a sole and unconditional owner for insurance purposes?

This is the reasoning of the Tennessee Supreme Court in Hughes v. Insurance Co., 147 Tenn. 170, 246 S. W. 25, 28 A. L. R. 797:

"But whether the title be legal or equitable, the interest of the assured is the same, so far as it affects the contract of insurance. The purpose of this provision is to prevent a party, who holds an undivided or contingent, but insurable, interest in property, from appropriating to his own use the proceeds of a policy, taken upon the valuation of the entire and unconditional title, as if he were the sole owner, and to remove from him the temptation to perpetrate fraud and crime. For without this (provision as to sole and unconditional ownership) a person might thus be enabled to exceed the measure of an actual indemnity. But, *where the entire loss, if the property is destroyed by fire, must fall upon the party insured, the reason and pur-*

24 F.(2d)—15

*pose of this provision does not seem to exist;* and in the absence of any particular inquiry as to the specific nature of the title, or of any express stipulation in the policy that the insured held the legal or equitable title, either being available to secure an entire unconditional and sole ownership, the provision referred to can, we think, have no force to defeat the plaintiff's recovery in this case.'" Imperial, etc., Ins. Co. v. Dunham, 117 Pa. 460, 12 A. 668, 2 Am. St. Rep. 686; Hughes v. Miller's Ins. Co., 147 Tenn. 171, 246 S. W. 23, 28 A. L. R. 797.

One of the cases relied on by respondent is Western Assurance Co. v. White (decided in 1926 by the Supreme Court of Arkansas) 171 Ark. 733, 286 S. W. 804, 48 A. L. R. 349, which at first blush seems to flatly hold that the estate by the entirety does not permit the husband to insure as "sole and unconditional owner." This case, however, is based on, and cites as its authority, Branch v. Polk, 61 Ark. 388, 33 S. W. 424, 30 L. R. A. 324, 54 Am. St. Rep. 266, where the court considered the effect on estates by the entirety of the provision of the Constitution and statutes which had enlarged the rights of married women. The court said in the White Case, at page 806 (171 Ark. 737):

"It follows, therefore, that the husband has no longer, as at common law, control over the interest of his wife in an estate by the entirety, but she has the right to an equal and separate enjoyment of the proceeds derived from such an estate."

In other words, an estate by the entirety being diametrically opposite in Arkansas to one in Tennessee, the rule is, of course, just to the contrary. We are considering a Tennessee case, where the common law, as to estates in entirety, does prevail, and therefore the case cited by respondent is a strong authority for complainant.

The respondent is attempting to set up a strictly technical defense, which works a forfeiture of a contract of insurance made in good faith, and to put the burden of a loss by fire on the owner of a house who honestly thought it fully insured. It cannot complain if it runs afoul of a technical and obsolete estate, based on medieval conceptions of the effect of matrimony, which happens to still linger on in Tennessee.

Holders of fire insurance policies, however, should take warning. In this case McNeil, of course, when he had title made by entireties, knew nothing of its legal peculiarities. He might just as easily have had the title made to himself and wife as joint tenants, and his policy, taken out in good faith,

and renewed in good faith, on which he relied to protect the fruit of his life's earnings in a humble capacity, would have been void. If I am mistaken in my interpretation of the Tennessee law and its application to this policy, then it is void.

Holders of fire insurance policies should carefully scrutinize them, and, if necessary, have them construed by lawyers. Above all, they should patronize only established and intelligent agents, who know the insurance business, and not give their fire policies to attractive young ladies, who need the premium commissions, but know no other features of the business. Whatever may be thought of the ethical policy, or, in the long run, the business policy, of technical defenses to honest losses, fire insurance companies have a perfect right to make them, and continually do so. Modern civilization, with its high standard of living, is largely dependent, both for its material security, and most certainly for the peace of mind of its inhabitants, on insurance. The holder of an insurance policy taken out in good faith, without false representation or rather fraudulent representation on his part, should be able to rest easy on its security. He can not do this without vigilantly perusing his policy, and without consulting and doing business with high-class insurance agents, who know their business, and know how, and are anxious to, protect their customers. The amateur lawyer and the amateur doctor have done much harm in time past, and the amateur fire insurance agent is in the same class.

In accordance with this opinion, let a decree be prepared, giving judgment to complainant, with costs, for $4,500 with interest at 6 per cent. The prayer for the statutory penalty of 25 per cent. of the face of the policy is denied. Penalties should only be enforced where the defense is without merit on its face, and certainly the instant case presents a nice question of law.