## BONIN et al. *v.* DURAND.

The seal of the court is essential to the validity of an execution; without it a sheriff has no authority to act. There is no difference between a decree for the seizure and sale of mortgaged property and an ordinary decree, as to the necessity for issuing a writ of execution.

By the omission to reinscribe a mortgage within ten years from the date of the first inscription, the effect of the inscription, not of the mortgage itself, ceases. The doubt which has existed as to the proper interpretation, on this point, of art. 3333 of the Civil Code, has arisen from the inaccurate translation from the french text. The mortgage is unimpaired thereby, as between the mortgagor and those claiming under him, and the mortgagee. C. C. 3314, 3315, 3316.

APPEAL, by the parties cited in warranty, from a judgment of the District Court of St. Martin, *Overton*, J. The facts of the case are stated in the opinion *infrá*.

*Brent*, for the plaintiffs. The sale under which defendant claims, is null, the execution not having the seal of the court affixed to it. C. P., 179, no. 7, 625, 626, 627, 774. 7 La. 70. 9 La. 542. 10 La. 483. 12 La. 573. 2 Rob. 377. 3 Ib. 155. 17 La. 40. Unless the forms of law have been complied with, a purchaser can acquire no title under a sheriff's sale. 4 Mart. 513. 5 Ib. 625. 11 Ib. 610. 3 La. 421. 9 La. 543. 10 Rob. 32.

*Simon* and *Magill*, for the appellants. We contend : 1. That neither the seal of the court, nor the signature of the clerk, are necessary to authorise the sheriff to carry into effect an order of seizure and sale granted by the judge ; that it is sufficient for him to have a memorandum or list of the property to be seized, and that the order of the judge is a sufficient authority to act. 2. That if a seal is required to the list of property or to the writ, its absence is not sufficient to annul a sheriff's sale, which, in all other respects, has been made with all the formalities of the law.

1st. The sale was made by virtue of an order of seizure and sale granted by the judge at chambers, a proceeding which our Code of Practice calls "executory process." C. P. art. 732 *et seq*. The rules of proceeding pointed out by arts. 734, 735, 736 and 737 of the Code of Practice are the only ones under which the sheriff derives his authority to seize and sell. They require a simple petition to the judge, who thereupon grants an order, under which the creditor may proceed against the debtor, by causing the mortgaged property to be seized and sold. Art. 736 says : "The judge has the power to issue the order of seizure and sale," and nothing in any of the provisions of the law relative to this subject shows that an order of seizure and sale ought to issue in the same manner as a writ of *fi. fa.*, which the Code, art. 641, says, the party in whose favor a judgment has been rendered must apply for to the clerk, who, under art. 774, is bound, in issuing all orders or writs, to seal them and sign them. Here, the order was granted, that is to say, issued by the judge, and it was undoubtedly

a sufficient authority for the sheriff to act under, from the moment that, according to art. 735, in obtaining the order of seizure and sale, due notice was given to the debtor.   It follows that a writ issued by the clerk was unnecessary; that the order of the judge was a sufficient authority for the sheriff to act; and that, in order to enable him to seize the property, a list or memorandum of its description is all that was required to be given to the sheriff.   Thus, it is immaterial whether there was a seal to the certificate signed by the clerk, and even whether the clerk had signed it or not, for the sheriff does not derive his authority to act in executory process from any writ or order issued by the clerk, but from the order granted or issued by the judge to whom the petition is presented.

2d.  But if it be necessary that there be a regular writ issued by the clerk, after having obtained the order of the judge, the law does not say, in any of its provisions, that its absence shall be a cause of nullity.   This court have decided that they would never recognise any nullity as resulting from irregularities or informalities, unless positively pronounced by law.   The want of a seal to a writ issued and signed by the clerk, does not and cannot lessen the authority which the sheriff had to carry the order of the judge into execution.   The order is a sufficient warrant; and no injury can ever result to the party against whom the order is obtained, from the absence of a seal, or of the mark, which it is customary to affix to judicial proceedings.   In the case of *The State* v. *P. B. Martin, ante* p. 667, this court have, to a certain extent, expressed views similar to these with regard to nullites resulting from informalities, and have said that they would not recognise such nullities, unless expressly declared by law.

The judgment of the court was pronounced by

SLIDELL, J.   Several alleged informalities in the judicial proceedings and sale under which the defendant claims title, have been specially set forth in the petition, and elaborately discussed at bar.   We shall give our attention to one, which appears to us a fatal defect.   A decree of seizure and sale was rendered, in 1838, against certain mortgaged property, including the slaves now in controversy.   A writ of seizure and sale issued, which was returned by order of the seizing creditor.   In 1844, without any new order of court, the clerk issued a second writ of seizure and sale, upon the authority of which the judicial sale was effected.   This writ was signed by the clerk; but, as is admitted by the parties, did not bear the seal of the court.   We consider the seal of the court an essential requisite to the validity of an execution; and as it did not exist in the present case, the sheriff must be considered as having made the sale without any lawful authorisation. It is urged by the learned counsel for the defendant, that no writ was necessary; that it was sufficient that a decree of seizure and sale had been made by the court.   We cannot recognise any distinction, in this respect, between a decree of seizure and sale and an ordinary final decree.   Both are judgments, and in both a writ is necessary as the sheriff's warrant for their execution.   That process is to be issued by the clerk in the proceeding *via executiva,* is obvious from the provisions of the Code of Practice, and upon general principles; and the universal practice since the promulgation of the Code, as we believe, has been to issue a formal writ under the seal of the court, as in ordinary cases.

It is not indispensable for the decision of the present suit that we should express an opinion upon the other points made in the case.   But as they have been fully argued, and as it is evident that there will be further litigation between these parties, we have considered it proper to notice some of the points presented by the plaintiffs.

We consider the mortgage executed by the plaintiffs' ancestor to the bank, as covering not merely the stock, but also the loan made to *Madame Martinez,* pursuant to the credit to which she was entitled as a stockholder.   A consi-

98

BONIN
v.
DURAND.

deration of the true intent and spirit of the charter of the "Consolidated Association," which charter is expressly referred to in the act of mortgage, might perhaps suffice for the solution of the question. But besides this, the language of the contracting parties in the act of mortgage very clearly indicates their intention, that the loan should be secured by mortgage. It recites that the mortgagor desires to furnish a mortgage in conformity to the provisions of the charter, specially referring to the 5th and 6th sections of the statute of 1827, and the 6th section of the amendatory statute of 1828, in which sections the security of the capital by mortgage is contemplated, the right of the stockholder to a loan declared, and hypothecary obligations of whatever nature subscribed by individuals in favor of the bank are constituted a special guarantee and security for the reimbursement of the capital of $2,500,000. The mortgagor, after these recitations, proceeds to mortgage the slaves in question, describing them, and adding the usual covenants *de non alienando*, &c. The mortgagor then declares her intention to avail herself of the credit allowed her as a stockholder, and acknowledges the receipt of the loan. The act then recites that she has furnished her bond for the amount of the loan, "laquelle obligation a été signé et paraphé *ne variétur* par le juge. ex officio notaire, soussigné, conformément à la loi, et en conformité de l'acte hypothécaire susmentionné."

It was argued that the mortgage had been lost by the failure to re-inscribe it within ten years. The plaintiffs are the heirs of the mortgagor, and represent the person of their ancestor. The failure to re-inscribe would, in ordinary cases, be fatal as to third persons, but leaves the mortgage unimpaired as between the mortgagor and mortgagee. The doubts which have existed as to the proper interpretation on this point of article 3333 of our Civil Code, have arisen from the inaccurate translation of the french text. It is the "*effect*" of the inscription which ceases, not of the mortgage. The subject was very carefully considered, after full argument, in the recent cases of *Shepherd* v. *The Orleans Cotton Press*, ante p. 100, and *McElrath* v. *Dupuy*, ante p. 520. See also Civil Code, arts. 3314, 3315, 3316;

Upon the plea of prescription of the debt set up by the plaintiffs, the court below was of opinion that the debt was not prescribed, and gave judgment accordingly. In this the plaintiffs say there is error; and, in their answer to the appeal, they pray that the judgment of the court, in this respect, be reversed. After a careful consideration of the evidence our minds are not entirely satisfied upon the question of prescription. While we, however, reverse the opinion of the district judge upon this point, we are not prepared to adjudge the question in the plaintiffs' favor. Much light may be thrown upon the facts of the case in the future contest which will probably occur; the examination of the point is not indispensable to the decision of the present suit, and we shall leave it entirely open.

It is therefore decreed that so much only of the judgment of the court below as decrees "*that prescription as to the debt has not attached, but that the plea of prescription to the mortgage is sustained,*" be reversed. And it is further decreed that, in all other respects, the said judgment be affirmed, with costs; leaving the question of prescription as to the debt open. And it is further decreed that the plea of prescription, or peremption, of the mortgage executed in favor of the said Consolidated Association, be dismissed.