M. Taylor v. J. Graham, and A. Shaw, Sheriff.

MILTON TAYLOR *v.* JAMES GRAHAM AND A. SHAW, Sheriff.

Courts will notice judicially, without proof, all the military orders issued by the Commanding General whilst New Orleans was held by the United States troops, and which affected the action of, and the proceedings in, the Courts of this State.

A party applying for an order of seizure and sale is not bound to presume that a person, whom he is aware is the general agent of an absent or non-resident defendant, has power to represent such defendant in the defence of a suit against him. The appointment of a curator ad hoc to represent the defendant in such a case, is regular; if the agent has full power, it is his duty to cause himself to be substituted for the curator ad hoc during the progress of the suit.

The law does not require the return of a writ of seizure and sale within seventy days.

Article 745 of the Code of Practice, and the terms therin used—" the same delays and formalities"— have reference to the sale of the property seized and do not refer in any manner to the mode or time in or during which returns of orders of seizure and sale shall be made.

It suffices that the law is silent as to return into Courts of writs of seizure and sale, and that no definite period for the return of the writ in question was therein prescribed. The Court cannot, therefore, say that the tardy action of the sheriff in the execution of the writ, rendered the sale made under it a nullity.

APPEAL from the Sixth District Court of New Orleans, *Duplantier,* J. *Hewes & Eustis,* for appellant. *Durant & Horner,* for appellees.

ILSLEY, J.   The plaintiff, Milton Taylor, has instituted this action to annul and set aside the sheriff's sale of certain lots of ground in New Orleans, made on the 7th day of June, 1865, in virtue of a writ of seizure and sale issued from the Sixth District Court of New Orleans, in the suit then pending of *James Graham* v. *Milton Taylor.*

The grounds of nullity relied on by the plaintiff, as stated · separately in the decree of the District Court, are :

1. That the writ issued in contravention of a military order, prohibiting the foreclosure of mortgages.

2. That the appointment of a curator ad hoc to represent the defendant in the executory process, and the notice of seizure to this curator, as well as the appointment of the appraisers to estimate the property, was uncalled for, illegal and unauthorized, because the defendant was, at the time, represented in the city by a duly authorized agent.

3. That the appraisement of the property was irregularly made.

4. That the writ was levied upon the property after it had expired, which was no valid seizure ; and lastly, that the sheriff sold in block two distinct and separate pieces of property, which should have been sold *separately.*

These alleged nullities will be examined seriatim :

I. The order of seizure and sale, on which the sheriff's sale was made, was granted by the judge on the 30th August, 1864, at which time the General Military Order, No. 15, which is found in the record, was no longer operative, having been superseded by General Order No. 113, which reads thus :

"HEADQUARTERS DEPARTMENT OF THE GULF, New Orleans, Aug. 22, 1864.

"I. General Order No. 15, February 8, 1863, prohibiting foreclosure of mortgages and forced sales of property, are hereby so far modified as to allow foreclosures and sale, except in cases where it is against equity and justice, and the parties interested are plainly entitled to the favor of the government.

"II. Any party claiming temporary relief from execution, under foreclosure or order of sale, shall establish before a military commission, herein named :

"1. That the sale of the property is against equity and justice.

"2. That the temporary suspension of the order of sale will not work injustice to the parties.

"3. That all taxes upon said property are paid, and the improvements insured.

"4. That he is a loyal citizen, engaged in laudable pursuits of industry, recognizing the rights and maintaining the authority of the Government, and is justly entitled to its protection and favor against such sale.

"III. Colonel E. G. Beckwith, Major G. W. Richardson and Lieut. A. Foote are hereby appointed a commission to consider and report upon all applications for relief against foreclosures and forced sales of property within the Parishes of Orleans, Jefferson, St. Bernard and Plaquemine.

"IV. Applications for relief against foreclosures of mortgages or forced sales in Parishes not otherwise named, will be referred to the Provost Marshal of the Parish until another commissioner is appointed."

This General Order, No. 113, which is set forth in extenso, was not in evidence on the trial; but that is not material, for, as we held, in the case of *Lanfear* v. *Mestier*, not yet reported, this Court will notice judicially, without proof, all the military orders issued by the Commanding General whilst New Orleans was held by the United States troops, and which affected the action of, and the proceedings in, the Courts of this State.

The order and writ of seizure and sale bore date the 30th August, 1864, eight days after the promulgation of this General Order No. 113, and, as the defendant, Milton Taylor, did not avail himself of the protective clause in it, he has no reason to complain of the proceedings as contravening a military order.

II. The appointment of a curator ad hoc to represent the absent defendant was not in itself illegal. See the case of *Farrell* v. *Klumpp*, 13 An. 311. But it is contended that, as he was represented by a special attorney, proceedings in the suit should have been had contradictorily with that attorney, and not with a curator ad hoc, and this is urged as a ground of nullity.

We gather from the proof in the record that Graham, the plaintiff in the executory process, was aware, before the institution of his suit, that

John A. Watkins was acting as the general agent of Milton Taylor; but it is not shown that he knew, at any time, that Watkins had the power to represent Taylor in the defence of his suit against him. Such a power is not simply one of administration. It must be specially delegated. See *Dickson* v. *Morgan*, 6 A. 562,

Why did not Watkins communicate to Graham this important fact? Or, why did he not cause himself to be substituted for the curator ad hoc, during the progress of the suit? Taylor complains with bad grace of the negligence of his special attorney. It suffices for Graham, in any event, that the fault cannot be imputed to him, and it is therefore not a ground to be urged for annulling the sale made by the sheriff. We concur fully with the Judge of the lower Court in his reasons for disregarding this objection.

III. Apart from the objection, that one of the appraisers was appointed by the curator ad hoc, and not by Watkins, Taylor's attorney, which is not a tenable one, we cannot perceive any irregularity or illegality in the appraisement of the property sold, and this ground must also be disregarded.

IV. It has been already observed that the writ of seizure and sale were dated the 30th August, 1864, about which time the writ came into the sheriff's hands. On the 1st of September following he demanded payment, etc., of the curator ad hoc. It was only on the 31st May following, 1865, that the sheriff notified the curator ad hoc, that he had seized and would proceed to sell the mortgaged property.

If the writ of seizure and sale, like all writs of fieri facias was returnable in seventy days, it had lost its vitality when the sheriff made the seizure, and no valid sale could be made under it.

There is no law which makes provision for the return day of writs of seizure and sale, unless the acts in relation to the return of writs of fieri facias, embrace every species of final process. It has been often held, and very properly, too, that the *execution* of the process of seizure and sale must be conducted in the same manner as in ordinary cases under a fi. fa.; but what is meant by the term execution?

Execution, in practice, is the act of carrying into effect the final judgment of a Court, or other jurisdiction. The return of writs into Court by the sheriff is not technically an element in the execution of those writs, but merely a short account in writing made by the sheriff, or other ministerial officer, of the manner in which he has executed the writ. It is the duty of such officer to return all writs on the return day.

See Bouvier's Law Dictionary, edition 1839, vol. 2, p. 367. The distinction is manifest from the very tenor of writs of final execution, as to the return thereof, which usually conclude with an injunction to the sheriff to make return, etc., *of what he shall do under the writ.*

The writ of seizure and sale, in the present case, concluded thus: "And what you do in the premises you make return thereof, together with this

writ, to our said Court, as the law directs."

As we construe Article 745 of the Code of Practice, the terms therein used, "the same delays and formalities," have reference to the sale of the property seized, and do not refer, in any manner, to the mode or time in or during which returns of orders of seizure and sale shall be made. We have not considered, and do not decide, for it is not now necessary, what would have been the legal effect, had the writ prescribed a delay certain for its return. It suffices that the law is silent as to return into Courts of writs of seizure and sale, and that no definite period for the return of the writ in question was therein prescribed. This Court cannot, therefore, say that the tardy action of the sheriff in the execution of the writ rendered the sale, made under it, a nullity.

We are satisfied that the construction put by us on the Article 745 C. P. is that which the Courts of this State have invariably placed upon it, and that the requirements of the law in relation to the return of writs of fieri facias do not apply to writs of seizure and sale. It would be calamitous, indeed, had a sense of duty impelled us to a different interpretation of the law than the one which, after deliberate consideration, we have reached—to an interpretation which, in the language of Chief Justice Martin, "would open the floodgates of litigation, invite cupidity to frequent attacks, and cause alarm and insecurity at the precariousness of judicial sales."

As to the objection that the lots were sold in block, and not separately, that cannot be listened to ; for, as this Court, in the case of *Bandue* v. *Connery*, 10 Rob. 472, very properly said : "It is clear that the defendant in execution cannot complain of the sale made by the sheriff of the property in a *lump*, unless he alleges and shows that he vainly required him to sell it in distinct and separate parts." See also *P. A. Lambert* v. *Bernard de Santos*, 10 An. 725.

The plaintiff having shown no legal ground to annul the sheriff's sale, which he attacks, the judgment of the District Court must be affirmed.

It is therefore ordered, adjudged and decreed, that the judgment of the District Court be affirmed, the costs of appeal to be paid by the appellant.