## YORK v. ACADIA LAND CO.
### No. 416.

District Court, W. D. Louisiana, Monroe Division.

July 30, 1931.

On Rehearing May 24, 1932.

Thos. Leigh, of Monroe, La., for complainant.

H. R. Boyd, of Memphis, Tenn., and Stamps Farrar, of New Orleans, La., for First Nat. Bank of Memphis, Tenn.

Theus, Grisham, Davis & Leigh, of Monroe, La., for receiver.

DAWKINS, District Judge.

This cause is now considered upon the application for a rule by the First National Bank of Memphis, Tenn. (hereinafter called the bank), against the receiver of the Acadia Land Company (hereinafter called the Land Company), directing the latter to show cause why the bank should not be permitted to proceed with the foreclosure of a mortgage upon certain timbered lands belonging to the Land Company.

The circumstances surrounding the matter are as follows: On July 16, 1923, the plaintiff, Robert York, and one Mary Y. Trigg, as the then owners of the property, executed a note to their own order for the sum of $100,-000, bearing interest at the rate of 6 per cent. per annum from date, due five years later, providing for the payment of 5 per cent. attorney's fees and secured by special mortgage upon the property in question; said act of mortgage importing a confession of judgment and containing the pact de non aliendo, permitted by the Louisiana Code. This note was negotiated and found its way into the hands of the bank, presumably before maturity.

On the 17th of August, 1925, York and Trigg sold the lands to the Land Company for the recited consideration of $300,000, $200,000 of which was stated to have been paid in cash, and, for the balance, it assumed payment of the mortgage note above described.

On July 9, 1929, the bank filed its petition in the Seventh district court for the parish of Concordia, La., alleging that it was the bona fide holder before maturity of said mortgage and note and there was still due and unpaid thereon the sum of $37,821.13, with interest from May 31, 1929. It prayed for an order of executory process, under the laws of the state; that is, that the property be seized and sold to satisfy said indebtedness, interest, and attorney's fees. Thereupon a decree was signed by the state court, directing the issuance of "executory process as prayed for. * * *" It appearing from the petition that York and Trigg, the makers of the note and mortgage, were nonresidents of the state, in conformity to its prayer, a curator ad hoc was appointed to represent them, and on the 11th day of July following, the notice to pay required by the state statute to precede the actual seizure, was issued by the clerk and served by the sheriff upon the curator. So far as the record before me shows, the writ of seizure and sale required by the state law was never issued or executed.

While the matter was thus pending in the state court, York, on the 20th of June, 1930, filed in this court a petition, praying for the appointment of a receiver. He alleged that the Acadia Land Company was chartered under the laws of the state of Delaware, with its principal office in the city of Memphis, Tenn., and that its "entire property * * * consists of more than 15,000 acres of timbered lands (the property involved in this proceeding), situated in Concordia Parish"; that he was a creditor of the said company to the extent of $90,000, which had other creditors; that the taxes upon the lands for the year of 1929 had not been paid and they were being advertised for sale by the sheriff; that its said property had been previously sold for the taxes of 1928; that the time for redemption was about to expire and that the company was wholly without means to raise funds for either purpose; that a suit had been filed in said parish of Concordia, by one Grace Y. Allen, claiming to own an undivided interest in said lands, and for that reason

said company had been unable to sell any of said property to raise the money to pay said taxes; and that it was necessary for a receiver to be appointed to take possession of said lands, authorized to issue certificates of indebtedness to pay the taxes and redeem the property, and ultimately to sell the same "for the benefit of parties at interest." It was further alleged that J. C. Theus of Monroe, La., was its agent and general attorney in this state for the service of legal process, and attached to the petition was a resolution by the board of directors authorizing him to accept service and consent to the appointment of a receiver. This resolution was signed by the plaintiff, Robert York, as president of the company, and by Y. M. Coyle, as secretary. Upon this showing, and without any knowledge of the fact that the petition for foreclosure had been filed, this court appointed Albert Horuff, vice president of a local bank in this city, receiver of said company, and directed him to take possession of its property in this state. He qualified three days later, on June 23d, and on July 5th obtained from the court an order appointing counsel, filed a report of assets of the company, and asked to be allowed to issue $12,000 of receiver's certificates to pay the past due taxes, amounting to $9,000, and to cover the expense of having said lands inspected and kept free from trespass. An order in conformity to this prayer was entered, and on the 7th of the same month twelve certificates of $1,000 each were issued. They were negotiated, and out of the proceeds the receiver paid the tax collector $4,225.91, being all of the taxes for 1929 and one-tenth of those for the year 1927. It developed that the bank, alleged holder of the mortgage and note, had redeemed the property from the tax sale for the year 1928, on June 13, 1930, prior to the appointment by this court of the receiver on the 20th, and on July 10th the latter reimbursed the bank with a check for the sum of $4,902.16, covering its expenditure with interest, which was accepted by the bank with full knowledge, out of the funds realized from the certificates.

It is the contention of the bank that this court was without lawful power to appoint a receiver for the property for the reason that the state court had previously acquired exclusive jurisdiction over it through foreclosure proceedings. The receiver denied that he had any knowledge of the suit to foreclose in the state court until after his appointment, further averring that no writ of seizure had ever issued and therefore the state court had never acquired jurisdiction. He further alleged that the Acadia Land Company owned the property, had never been served with any of the process in the state court, and that the bank was estopped to question the jurisdiction of this court, for the reason that it had knowingly accepted from the receiver the repayment of the sum expended by it to redeem the property.

Unquestionably, a very unfortunate situation has been created by the circumstances above detailed, but the court must attempt to dispose of it under established rules of law and practice. No explanation whatever has been offered as to why the foreclosure proceedings were allowed to lie so long in the state court without the issuance of the writ of seizure and sale. At the same time, it is very hard to believe that Robert York, complainant in the application for the appointment of a receiver, and president of the Acadia Land Company, did not know of the institution of the foreclosure suit, since he was made one of the defendants therein, and an attorney of reputable standing was appointed to represent him and presumably informed York of these facts. If so, then he, as the complaining creditor, and the defendant company, through him as president, had knowledge of the state court action before applying to this court for a receiver. No effort whatever was made by either side to the present proceeding to inform the court as to these matters, and it can, therefore, only assume that the curator, who was an officer of the state court, performed his duty.

The act, No. 25 of 1902 of the state Legislature, provides that notwithstanding a corporation may be in the hands of a receiver, if a creditor has a mortgage importing a confession of judgment and containing the pact de non aliendo, he may proceed to a foreclosure by executory process in the same manner as could be done in the absence of such receivership. This statute has been construed and enforced in a case very similar to the present one, except that the receiver there appears to have been appointed prior to the institution of foreclosure proceedings, which of course, in the absence of the statute, would have been more advantageous to the receiver, for the reason that the court appointing him had already taken possession and jurisdiction of the corporation's property before the executory proceedings were instituted. See Interstate Trust & Banking Company v. Powell Bros. & Sanders Company, 128 La. 1004, 55 So. 654. I am not prepared to say how far this ruling would be binding upon this court, if the receiver here had been appoint-

ed prior to the filing of the foreclosure suit. As above stated, the holder of the note and mortgage, with the confession of judgment and non alienation clause, obtained from the state court an order for executory process approximately eleven months prior to the filing of the bill in this court for a receiver. A writ of seizure under the state law, unlike a writ of fi. fa., has no return day and it has been held that the same can still be executed even months or years after its issuance. Taylor v. Graham et al., 18 La. Ann. 656, 89 Am. Dec. 699. It is true no writ was issued in the present case, but there is abundant authority that actual seizure is not necessary if the proceeding is one in rem, or otherwise wherein the purpose is to subject property to the custody and control of the court. See Farmers' Loan & Trust Company v. Lake St. El. R. Co., 177 U. S. 51, 20 S. Ct. 564, 44 L. Ed. 667, and authorities cited therein; Palmer v. Texas, 212 U. S. 118, 29 S. Ct. 230, 53 L. Ed. 435; Holland Trust Co. v. International Bridge & Tramway Co. (C. C. A. 5th Cir.) 85 F. 865; Adams v. Mercantile Trust Co. (C. C. A. 5th Cir.) 66 F. 617. It is also well settled by the jurisprudence of the state that one holding a mortgage with the pact de non aliendo can ignore the transferee of property and proceed solely against the mortgagor. Stevens v. Pinneo, 26 La. Ann. 618; Interstate Trust & Banking Co. v. Powell Bros. & Sanders Co., supra.

As I see the case, there are only two circumstances which afford difficulty in disposing of it. The first is, the fact that the plaintiff in foreclosure, after obtaining the order for executory process and service of the preliminary notice required by law, failed to have a writ of seizure and sale issued but allowed the proceedings to lie dormant for nearly a year prior to the appointment of the receiver by this court and until the filing of this rule on the 21st day of December, 1930; and the second is, the alleged estoppel growing out of the acceptance by the bank of the money paid to it in reimbursement of the sum it had expended in redeeming the lands, and which it knew was being paid out of the funds realized from the receiver's certificates. Would the record owner of the property, in a case like the present, who was not the mortgagor, but a subsequent transferee, even though it might exceed in value many times the amount of the mortgage owing, be compelled to stand by and see it sold for taxes or to await indefinitely the pleasure of the plaintiff in foreclosure? Of course, one answer would be that the amount due for taxes is an obligation of the owner and a sale could

easily be avoided by payment; but with all of the property under seizure, or affected by proceedings looking to its foreclosure, it would be difficult, if not impossible, to raise the money for this purpose. In the absence of foreclosure proceedings, such a situation would justify its creditors or stockholders in provoking a receivership. The payment of the taxes was certainly in the interest of the mortgagee, as well as the owner of the property, for they bore as a lien upon it superior to the mortgage.

As to the first proposition, it does not seem to me that the owner of the property was without remedy. In so far as any sale for taxes, after the institution of the foreclosure proceedings, was concerned, the court which had thus acquired jurisdiction could have protected its possession and custody by enjoining the sale of the tax collector and relegating him to an intervention in the foreclosure for the assertion of the state's superior lien upon the property. It likewise seems that the fact of the previous sale for taxes might have been brought to the attention of that court and proper action taken to protect the title to the property in the hands of the sheriff. In any event, I think the well-established rule that the court which first acquires jurisdiction of the res, either by actual seizure or through proceedings which necessarily contemplate subjecting it to custody and control, is entitled to retain it for all purposes, precludes this court from taking it out of the hands of the state court on the grounds alleged. See authorities above cited.

With respect to the second point, the issue here does not involve one of personal jurisdiction, which may be waived, but goes to the more important question of comity between courts, which by universal recognition has become a rule of law. It involves the exercise of power over the subject-matter or property, and if the state court had acquired jurisdiction, as was said by the Supreme Court of the United States in Covell v. Heyman, 111 U. S. 176, 4 S. Ct. 355, 28 L. Ed. 390, the effect was the same as if the property had been removed beyond the territorial limits of this court.

Counsel for the receiver have cited three decisions in support of the plea of estoppel, based upon the acceptance of the check for the refund of money paid out to redeem the property, to wit, Roger et al. v. J. B. Levert Company, Ltd., et al. (C. C. A.) 237 F. 737, 742, Dickerson v. Colgrove, 100 U. S. 578, 584, 25 L. Ed. 618, and Daniels v. Tearney, 102 U. S. 415, 26 L. Ed. 187. In the first of

these cases, the mortgagee had foreclosed by executory process, but the mortgagor had never surrendered possession. The sale was made in June, 1914, and in July following the debtor sued in the state court to annul the foreclosure sale because of serious illegalities therein. The mortgagee reconvened, asking that if the plaintiff in the annulment suit were decreed to own the property, it be given judgment for the amount of its claim with recognition of its mortgage lien, etc. The state court annulled the former foreclosure sale, but gave the mortgagee a personal judgment as prayed for and allowed it to recover also the sum of $6,000, which had been paid in taxes after the foreclosure, further reserving its right to sue for other expenditures in preserving, maintaining, and operating the properties, including taxes for 1914 and 1915. Thereupon, the mortgage debtor, who had at all times, as above stated, remained in possession, on March 28, 1916, filed a voluntary petition in bankruptcy, and the bankrupt court on the same day made the adjudication and appointed a temporary receiver to operate the property until a trustee could be elected. The receiver qualified and went into physical possession on March 30, 1916. On the following day the mortgagee filed in the bankruptcy court a petition, asking that certain persons, whom it named, be appointed coreceivers, which was refused. It also filed a petition in that court, setting up its judgment in the state court, and prayed that it be permitted to execute the same by the issuance of a writ of fi. fa., or in the alternative, that the bankruptcy court order the property sold to satisfy its said claim. The District Court for the Eastern District of Louisiana, after hearing, ordered the property turned over to the state court and directed the trustee to intervene for the protection of the rights of the estate.

On appeal by the trustees to the Court of Appeals for this circuit, the District Court was reversed; the circumstances and legal results being stated as follows:

"The action pending in the state court between the Levert Company and the Moore Planting Company, at the time the latter filed its petition in bankruptcy, was a personal action, although mortgage rights were involved. See article 12, La. Code of Prac.; Rogers v. Binyon, 124 La. 95, 49 So. 991; also, Ker v. Evershed, 41 La. Ann. 15, 6 So. 566. Such action could only have a semblance to a real action after an issuance of a writ of fieri facias and the seizure of the property on which the lien was claimed, and no writ of fieri facias had been issued,

and of course no seizure thereunder. And it may be noticed that in the state of the litigation between the parties no writ of fieri facias could be taken out except at the pleasure and convenience of the Levert Company at any indefinite time within ten years after the rendition of the judgment.

"At the time the Moore Company filed its petition in bankruptcy, said company was in full, undisturbed possession of all the plantations and property scheduled as assets in the bankruptcy; and, when the receivers were appointed, they took possession of all the property for the bankruptcy court, and they were in possession and control at the time the order complained of was entered.

"The application of the Levert Company to the bankruptcy court for the appointment of one of their number as a co-receiver is a judicial admission of these facts, and it cannot be said that the bankruptcy court has seized and taken possession of property at the time in the possession and custody of the state court.

"It seems therefore clear that, if we should concede that comity should prevail between the bankruptcy court and the state court, the case presented does not show a proper and necessary case for the exercise of the same.

"But this is not a case for the application of the doctrine of comity between courts. Such comity only prevails as between courts of concurrent jurisdiction, and in this case there is no such concurrent jurisdiction. Moran v. Sturges, 154 U. S. 256–283, 14 S. Ct. 1019, 38 L. Ed. 981; Pugh v. Loisel, 219 F. 417–423, 135 C. C. A. 221.

"It is well settled that, under the Constitution and laws of the United States, bankruptcy courts are vested with superior and exclusive jurisdiction in the administration of the estate of the bankrupt. Section 11 of the Bankruptcy Law [11 USCA § 29] gives authority to the bankruptcy court to stay proceedings in actions against the bankrupt pending in other courts.

"Any property surrendered by the bankrupt which could or should be released by the court from such administration can only be property in which, by reason of conceded and absorbing superior liens and privileges, the trustees in bankruptcy have no equity.

"In the present case, the record fully shows that by reason of the set-off and counterclaim of Moore Company against the Levert Company, provided for in section 68, Bankruptcy Law [11 USCA § 108], and which could not be allowed in the state court,

as well as by reason of the situation and prospects for the successful prosecution of the plantations in making and harvesting the crops of the present year, a very decided equity is shown in favor of the bankrupt's estate.

"It follows that the order complained of cannot be sustained on the ground of comity, nor on the facts of the case as to the want of equity on the part of the trustees."

One holding a mortgage of the character involved there and in the present case, may proceed either by executory process or by ordinary action, or he may convert the former into the latter, if he sees fit. In an ordinary action, the property is not seized, the petition may embrace other claims than those covered by the mortgage, as was true on the reconventional demand in the cited case, and it is neither contemplated nor is the machinery of the court set in action, to seize or reduce to possession property until a judgment has been pronounced contradictorily and a fi. fa., issued, after notice and delays for appeal—radically differing from executory process. The Court of Appeals, in Rogers v. Levert, referred to the petition by the mortgagee for the appointment of coreceivers in the bankruptcy proceedings, as "a judicial admission of these facts," that is the abandonment of executory process, conversion of its action into an ordinary suit, as well as the fact that the bankrupt had at all times been in the actual physical possession of the property, which was transmitted to the receiver and trustee in bankruptcy.

Dickerson v. Colgrove does not appear to have any application as it involved a question of title to real estate, wherein the claimant's ancestor in title had nearly twenty years before, in writing, disclaimed any interest in the property and the defendant had been in possession under a warranty title in good faith for nearly seventeen years. It was held that plaintiffs, claiming through the author of this letter, were estopped, as he would have been.

The case of Daniels v. Tearney also seems to be inapplicable to the present issue, as will appear from the syllabus quoted as follows: "The convention of the State of Virginia passed, April 13, 1861, an ordinance entitled 'An Ordinance to provide against the sacrifice of property and to suspend proceedings in certain cases,' whereby, if a debtor, against whom there was an execution in the hands of an officer, offered bond and security for the payment of debt, interest, and costs, when the operation of the ordinance should cease, his property should be restored to him. If he offered no bond, the property was to be restored to him without lien, unless it would bring its appraised value as of the date of Nov. 6, 1860. No executions were, after the date of the ordinance, to be issued against residents except in favor of the State. The convention passed, April 18, 1861, an ordinance of secession. A., against whom an execution was issued March 21 of that year, availed himself of the provisions of the ordinance of April 13, by giving the requisite bond and security. The judgment against him remaining unpaid and the ordinance having ceased to operate, suit was brought on the bond. Held, that the obligors are estopped from setting up that, by reason of anything contained in the ordinance, the bond is invalid."

Foreclosure by executory process is a proceeding peculiar to our law, wherein the debtor and creditor are permitted to couch their agreement in such terms and to surround it with such formality that the transaction itself—that is the note and the mortgage—affords all the evidence necessary for the court to pronounce a judgment ex parte thereon, which is subject to execution after three days' written notice to residents and five days to those domiciled out of the state, issued by the clerk and served by the sheriff. The principal requirements are that the mortgage shall be executed before a notary and two witnesses, the debtor shall acknowledge the indebtedness, and promise not to alienate the property described to the prejudice of the mortgage. The note is identified with the act by a paraph of the same date and signature of the notary. When foreclosure is sought, the creditor simply presents a petition to the judge in chambers, reciting that he holds such an obligation so acknowledged and secured, attaching certified copy of the mortgage act and the original note, alleging that the debt is due and unpaid, and thereupon a judgment is entered. It is a judgment for certain purposes, that is, it may be appealed from, or its execution may be enjoined on certain grounds, but it affects only the property covered by the mortgage, so that if sufficient is not realized to pay the debt in full a separate personal action must be brought against the debtor to recover the residue. Therefore, it is essentially a proceeding in rem. After the court has granted its order rendering the mortgage executory, all other duties of the clerk and sheriff with respect thereto are purely ministerial and may be enforced by mandamus. In other words, the court does not have to issue another order for the writ of seizure when the delays prescribed by the

statute after service of notice have expired, but the plaintiff in foreclosure presents the return of the sheriff to the clerk, showing the service of notice, and the latter issues the writ. The procedure is not greatly different from that required in the execution of a personal judgment by writ of fi. fa., wherein notice of judgment must be given, and the writ is then issued by the clerk without further order from the court. See Bonin v. Durand, 2 La. Ann. 776; Nash v. Johnson, 9 Rob. 8.

It could hardly be contended, if, after the order declaring the mortgage executory and directing the process to issue, notice was served and during the delays allowed for that purpose, application had been made to another court of concurrent jurisdiction to appoint a receiver, that jurisdiction in the first court had not attached, for the writ could not lawfully issue or the property be physically seized by the sheriff until after those delays. Hart & Hebert v. Pike, Bro. & Co., 29 La. Ann. 262. In that situation the plaintiff would have set in motion as fully as possible the machinery of the state court necessary to subject the property to its custody and the payment of his debt, in a proceeding which clearly contemplated that end. From a legal standpoint, therefore, can it be said that such jurisdiction was lost merely by the lapse of a greater length of time than these legal delays, even of months or years? The statute fixes a minimum delay after notice, but no maximum, for the issuance of the writ. Taylor v. Graham, 18 La. Ann. 656, 89 Am. Dec. 699.

As heretofore indicated, it is unfortunate that the receiver has negotiated certificates, obtained money from innocent persons, and spent it in payment of taxes and otherwise for the preservation of the property, and, therefore, for the benefit of the mortgagee, but I am constrained to believe that his remedy, or that of the holders of such obligations, is to intervene in the state court and assert a claim for reimbursement of the sums expended for taxes and the redemption of the property out of its proceeds in the hands of the sheriff.

I conclude, therefore, that the state court had already acquired jurisdiction and control of the property when the application for a receiver was filed and that this court was without right or jurisdiction as a matter of comity and settled jurisprudence to assert any authority over the same while those proceedings were still pending. The rule will, therefore, be made absolute. Proper decree should be presented.

### On Application for Rehearing.

The circumstances of this case are fully set forth in the opinion heretofore handed down. A rehearing was granted for the purpose of determining whether this court should require the plaintiff, in foreclosure in the state court, as a condition precedent to being permitted to proceed there, to reimburse the receiver in this court for sums paid for taxes and other expenses in preserving the property.

■ Upon further reflection it appears to me that in the nature of things, it would be impracticable for the state court to determine these matters satisfactorily, and I have concluded to follow in effect the precedent laid down by the Supreme Court of the United States in Harkin v. Brundage, 276 U. S. 36, 48 S. Ct. 268, 72 L. Ed. 457. In other words, I think the receiver should file an account of his administration from which may be determined the charges to be paid before turning the property back to the state court, and thereafter this court will fix a reasonable time within which the plaintiff in foreclosure in the state court may pay the same and have possession surrendered; otherwise, such further proceedings will be had here as conditions warrant.

The evidence offered by the plaintiff in rule upon the rehearing has strongly reinforced my conviction that the plaintiff in the present bill was fully aware of the suit to foreclose, but failed to disclose the fact to this court, and the receiver here was appointed, certificates issued, and expenses incurred in such manner that, like the Brundage Case, the court is required, in order to insure the integrity of its own orders and proceedings, to see that moneys expended on the faith thereof shall be paid before surrendering the property. In the Brundage Case, although the court concluded that the proceedings in the federal court were fraudulently instituted, it nevertheless required the state court to recognize all that had been done prior to the surrender of the estate, as a condition thereto, and, at the same time, fixed and settled the costs and expenses of the federal court.

I do not consider that the question of subrogation discussed in the brief of counsel for the First National Bank of Memphis, plaintiff in foreclosure, is important at this time, but that the extent to which jurisdiction through the receiver is sustained, the liens and priorities arising from the issuance of receiver's certificates and costs incurred attach as a matter of equity, and the point as to whether the receiver was subrogated to the

tax lien by reimbursing the mortgagee funds paid for the redemption of the lands from tax sale, is not reached.

A decree, directing the receiver to file an account covering his administration in accordance with the views herein expressed within ten days from the date thereof, should be presented.